IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 1 4 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| J. RAUL RODRIGUEZ and JUAN I. RODRIGUEZ, M.D. | § § § | |
| Plaintiffs, | § § | |
| VS. | § § § | CIVIL ACTION NO. **B - 0 2 - 1 5 7** |
| MEDICAL OFFICE BUILDINGS OF TEXAS, L.P., LINCOLN HARRIS, L.L.C. and COLUMBIA VALLEY REGIONAL MEDICAL CENTER | § § § § § | |
| Defendants. | § § | |

## NOTICE OF REMOVAL

Defendant Medical Office Buildings of Texas, L.P. ("Medcap") files this Notice of Removal on

the following grounds:

### I.
### Introduction

The Defendants, MedCap, Lincoln Harris, L.L.C. ("Lincoln") and Columbia Valley Regional

Medical Center (the "Hospital") are defendants in the state court lawsuit styled *J. Raul Rodriguez, M.D.*

*and Juan I. Rodriguez, M.D. vs. Medical Office Buildings of Texas, L.P., Lincoln Harris, L.L.C. and*

*Columbia Valley Regional Medical Center*, Cause No. 2002-07-2703-E, pending in the 357th Judicial

District Court of Cameron County, Texas (the "State Court Action").

In the State Court Action, Plaintiffs J. Raul Rodriguez, M.D. and Juan I. Rodriguez, M.D.

("Rodriguez") are two doctors who filed suit against their landlord, Medcap, and the property manager,

Lincoln, alleging claims relating to their medical office lease. Neither MedCap nor Lincoln are citizens

of Texas. The State Court Action should be removed to federal court on diversity grounds. Plaintiffs,

however, joined a non-diverse defendant, the Hospital, for the sole purpose of defeating diversity of

citizenship. The Hospital has been fraudulently joined because (i) Plaintiffs have knowingly or mistakenly pled that MedCap and Lincoln are citizens of Texas, when they are not; and (ii) there is no possibility that Plaintiffs can establish a cause of action against the Hospital.

Accordingly, the Hospital's citizenship should be disregarded for purposes of determining diversity of citizenship and removal should be granted on the basis of complete diversity.

## II.
### Removal Based On Diversity Jurisdiction

#### A.    Applicable law.

This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332. There is complete diversity of citizenship between the Plaintiffs and all *properly joined* defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

This proceeding is properly removed to this Court pursuant to 28 U.S.C. § 1441 and § 1446, and this Court is the United States District Court for the district and division where the State Court Action is pending.

#### B.    Plaintiffs have knowingly or mistakenly pled that MedCap and Lincoln are citizens of Texas, when they are not.

Plaintiffs pled that MedCap and Lincoln are citizens of Texas. *See* Plaintiff's Original Petition, Part II(3) and (4). In fact, Medcap is a Delaware limited partnership, with its principal place of business in Nashville, Tennessee. *See* Affidavit of Angela Playle dated August 12, 2002 (the "Playle Affidavit"), attached hereto as Exhibit A at ¶ 2. Medcap's general partner, MOB/GP of Texas, L.L.C., is a Delaware limited liability company also headquartered in Nashville, Tennessee. *Id.* Lincoln is a Delaware limited liability company with its principal place of business in Charlotte, North Carolina. *See* Affidavit of Sheila Pack dated August 13, 2002 (the "Pack Affidavit"), attached hereto as Exhibit B at ¶ 2.

C.    **There is no possibility that Plaintiffs can establish a cause of action against the Hospital.**

1.    **Standards for fraudulent joinder.**

To establish that non-diverse parties have been fraudulently joined, MedCap must demonstrate that "there is no possibility that [Plaintiffs] would be able to establish a cause of action" against the Hospital in the State Court Action. *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995). MedCap may prove either: (i) that there is no cause of action against the Hospital as a matter of law or (ii) that there is insufficient factual support for the Plaintiffs' claim against the Hospital. *See Rodriguez v. Sabatino*, 120 F.3d 589, 592 (5th Cir. 1997) (holding that defendant was fraudulently joined where he owed no duty and thus there was no claim for negligence as a matter of law), *cert. denied*, 523 U.S. 1072 (1998); *Burden*, 60 F.3d at 220 (finding that the "utter lack of record evidence" supporting a claim against the defendants supported the finding of fraudulent joinder). In this case, MedCap can prove both.

2.    **Plaintiffs have no cause of action against the Hospital as a matter of law.**

Plaintiffs assert causes of action against all of the Defendants for breach of contract, fraud and negligence.[1] There is no possibility that Plaintiffs can establish any of these causes of action against the Hospital.

a.    **Plaintiffs' breach of contract claim against the Hospital fails as a matter of law.**

Plaintiffs entered into a lease with the Hospital dated May 19, 1997 (the "Lease"). *See* Playle Affidavit, Ex. A at ¶ 4 and A-1. Plaintiffs allege in their Petition that all of the Defendants breached the Lease because they did not properly repair and maintain Plaintiffs' medical office suite. Specifically,

---

1  Plaintiffs also allege joint enterprise, apparent agency, respondeat superior, borrowed servant and ratification. These theories are not recognized in Texas as independent grounds of recovery; but rather, merely establish vicarious liability by which a plaintiff can establish secondary liability for a defendant. *See, e.g. Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998)(recognizing that the doctrine of respondeat superior is a theory of vicarious liability).

Plaintiffs claim that water leaks in their suite damaged certain medical equipment and supplies and caused them business interruption. Plaintiffs claim damages of $14,000 relating to supplies and equipment allegedly ruined in a water leak on January 21, 2002. *See* Plaintiffs' Original Petition, Part IV; *see also* Playle Affidavit, Ex. A at ¶ 6 and A-3. Plaintiffs also seek eleven (11) days of business interruption damages in the amount of $73,567.17. *Id.*

There is no possibility that the Plaintiffs can establish a breach of contract claim against the Hospital because in July 2000, the Hospital had sold the medical office building to MedCap and assigned the Lease to MedCap.

In pertinent part, the Lease provides:

> In the event of any transfer or transfers of [the Hospital's] interest in the Premises or in the real property of which the Premises are a part, [the Hospital] shall be automatically relieved of any and all obligations and liabilities on the part of Landlord accruing from and after the date of such transfer.

*See* Ex A-1 at Art. XVII.

In that certain Assignment and Assumption Agreement (the "Assignment"), the Hospital assigned all of its rights and obligations under the Lease to Medcap effective July 1, 2000. *See* Playle Affidavit, Ex. A at ¶ 5 and A-2.

Pursuant to the terms of the Lease and the Assignment, the Hospital was relieved from any and all liability to Plaintiffs under the Lease for liabilities accruing after July 1, 2000. In this case, all of Plaintiffs' damages occurred after July 1, 2000. Plaintiffs' breach of contract claim relating to alleged damages to equipment and supplies accrued in January 2002, well after the July 1, 2000 date of the Assignment. Plaintiffs' business interruption damages also accrued after July 1, 2000. Accordingly, there is no possibility that Plaintiffs can establish a breach of contract action against the Hospital. Plaintiffs' breach of contract claims against the Hospital fail as a matter of law.

Even if some or all of Plaintiffs' business interruption damages accrued prior to July 1, 2000, those damages are barred by the express terms of the Lease. The Lease provides in relevant part:

> Tenant hereby acknowledges that Landlord shall not be liable for any interruption to Plaintiffs' business for any cause whatsoever, and that [Plaintiffs] shall obtain Business Interruption Insurance coverage should [Plaintiffs] desire to provide coverage for such risk.

*See* Ex. A-1 at Article VII.

Because Plaintiffs' business interruption damages are barred as a matter of law pursuant to the express terms of the Lease, there is no possibility Plaintiffs can establish a breach of contract action against the Hospital for business interruption damages.

**b.      Plaintiffs' fraud and negligence claims against the Hospital fail as a matter of law.**

Plaintiffs also assert that the Hospital committed fraud or was negligent regarding the alleged water leaks in their medical office suite. Plaintiffs' claims arise out of a contract – the Lease. If Plaintiffs have viable claims, their damages relate to the subject matter of the Lease – occupancy of their medical office suite. As a result, Plaintiffs' action is one of contract, not tort, notwithstanding the label Plaintiffs have given it. *Southwestern Bell Telephone Co.v DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) ("[w]hen the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.").

Plaintiffs allege in Part IV of their Petition that the Hospital made certain oral misrepresentations that induced them to enter into the Lease. Plaintiffs do not, however, seek damages on account of such alleged oral representations.

Even if they did seek damages for alleged misrepresentations, oral representations made before or during the time the Hospital and the Plaintiffs entered into the Lease, that contradict the terms of the Lease, are inadmissible under the parole evidence rule. *Ross v. Stinnett*, 540 S.W.2d 493, 496 (Tex. Civ. App.--Tyler 1976, no writ)(holding that preliminary oral agreements are extinguished and merge

into the written contract); *Caranas v. Jones*, 437 S.W.2d 905, 910 (Civ. App.--Dallas 1969, ref.
n.r.e.)(holding that if the parties have reduced their agreement to writing, the terms of the writing
govern their obligations and rights as a matter of law). Moreover, Plaintiffs assert that these alleged oral
representations occurred in May 1997, well beyond the applicable statute of limitations.

Plaintiffs have no cause of action against the Hospital for fraud or negligence claims on account
of the $14,000 in alleged equipment and supplies damages, because -- as discussed in more detail above
-- those alleged damages occurred in January 2002, after the July 1, 2000 date, when the Hospital sold
the building to MedCap and assigned the Lease to MedCap. Pursuant to the Lease and the Assignment,
the Hospital is not liable for damages accruing after July 1, 2000.

Plaintiffs also cannot establish a cause of action against the Hospital for fraud or negligence for
their alleged eleven (11) days of business interruption claims for $73,567.17. As discussed above, the
Lease expressly prohibits such a claim, and it, too, occurred after July 1, 2000, when the Hospital
assigned the Lease to MedCap.

### 3. There is insufficient factual support for the Plaintiffs' claims.

Plaintiffs also attempt to impose liability on the Hospital by making the unsubstantiated and
conclusory allegation that Medcap and Lincoln acted as agents for the Hospital. To that end, Plaintiffs
apparently seek to impose liability on the Hospital through various theories of agency including joint
enterprise, apparent agency, respondeat superior, borrowed servant and ratification.

With respect to each of these theories, Plaintiffs fail to allege *any* facts in their Petition showing
an agency relationship between MedCap or Lincoln and the Hospital. Plaintiffs merely make the
general assertion that Defendants "acted in concert." *See* Plaintiffs' Original Petition, at Part IV.
Accordingly, Plaintiffs have failed to state a factual basis for any agency-based claim against the
Hospital. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699-702 (5th Cir. 1999) (finding no factual

basis for cause of action where plaintiff named individual as defendant but alleged "no actionable facts" specific to him).

**C.     The Amount in Controversy in Plaintiffs' Original Petition Exceeds $75,000**

As evident from the face of Plaintiffs' Original Petition, the amount in controversy in this action, exclusive of interest and costs, is greater than the required jurisdictional sum of $75,000.  Plaintiffs' Original Petition seeks actual damages of at least $87,567.17.  *See* Plaintiffs' Original Petition, Part IV.

### III.
### Timeliness of Removal

In accordance with 28 U.S.C. § 1446(b), this notice of removal is being timely filed within thirty (30) days after receipt of Plaintiffs' Original Petition.

### IV.
### Consent of All Served Defendants

All Defendants who have been served have indicated their consent to this Notice of Removal, as evidenced by their consents attached hereto as Exhibits "C" and "D."

### V.
### Attachment of State Court Pleadings

Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81 of the United States District Court for the Southern District of Texas, MedCap has attached as Exhibit "E" an index of all documents filed in the State Court Action, as Exhibit "F" a copy of the docket sheet in the State Court Action, as Exhibit "G" a copy of all process, pleadings, and orders served upon the Defendants and each document filed in the State Court Action, and as Exhibit "H" a list of all counsel of record, including addresses, telephone numbers and parties represented.

## VI.
## Notice of Removal Given to State Court

Contemporaneous with the filing of this Notice of Removal, MedCap is providing written notice of this filing to Plaintiffs. MedCap is filing a Notice of Removal to Federal Court, along with a copy of this Notice, with the 357th Judicial District Court of Cameron County, Texas, as required by 28 U.S.C. §1446(d). A copy of the Notice provided to the State Court is attached to this Notice as Exhibit "I".[2]

## VII.
## Conclusion

Because Plaintiffs have no possibility of success on the merits of their claims against Defendant Columbia Valley Regional Medical Center, the citizenship of the Hospital should be disregarded by this Court for purposes of determining the existence of diversity jurisdiction.

WHEREFORE, MedCap respectfully request that this case be removed to the United States District Court for the Southern District of Texas, Brownville Division, that this Court assume full jurisdiction of this action as provided by law, and that MedCap have such other and further relief to which it may show itself justly entitled, at law or in equity.

---

2  Exhibit "I" is attached hereto without the accompanying exhibits to avoid duplication.

Respectfully submitted,

Michael L. Hood
Texas State Bar No. 09943435
Michael King
Texas State Bar No. 24032634

**HAYNES AND BOONE, L. L. P.**
901 Main Street, Suite 3100
Dallas, Texas 75202-3789
Telephone: (214) 651-5000
Facsimile: (214) 651-5940

ATTORNEYS FOR MEDICAL OFFICE BUILDINGS
OF TEXAS, L.P.

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served on all counsel of record in accordance with the Federal Rules of Civil Procedure by certified mail, return receipt requested on the  13  day of August, 2002.

Ricardo M. Adobbati, Esq.
Attorney & Counselor At Law
134 E. Price Road
Brownsville, Texas 78521

**CERTIFIED MAIL NO. 7106 4575 1292 6386 5702**
**RETURN RECEIPT REQUESTED**

Thomas Sullivan, Esq.
Brin & Brin, P.C.
1325 Palm Boulevard, Suite A
Brownsville, Texas 78520

**CERTIFIED MAIL NO. 7106 4575 1292 6386 0493**
**RETURN RECEIPT REQUESTED**

A. Erin Dwyer
Figari, Davenport & Graves
901 Main Street, Suite 3400
Dallas , Texas 75202

**CERTIFIED MAIL NO. 7106 4575 1292 3574 4936**
**RETURN RECEIPT REQUESTED**

Michael L. Hood

## AFFIDAVIT OF ANGELA PLAYLE

STATE OF TENNESSEE    §
                         §
COUNTY OF DAVIDSON   §

      BEFORE ME, the undersigned authority, personally appeared, Angela Playle, upon her oath, deposed and stated the following:

      1.     My name is Angela Playle. I am over the age of 18 years, of sound mind and competent in all respects to make this Affidavit. I have personal knowledge of each of the statements and facts set forth herein, and each of those statements is true and correct.

      2.     I am employed as Vice-President-Legal Affairs of Medical Office Buildings of Texas, L.P. ("Medcap"). MedCap is a Delaware limited partnership with its principal place of business in Nashville, Tennessee. MedCap's general partner, MOB/GP of Texas, L.L.C., is a Delaware limited liability company headquartered in Nashville, Tennessee.

      3.     As Vice-President-Legal Affairs, my responsibilities include management and oversight of litigation. I have been employed as Vice-President-Legal Affairs for Medcap since January 2002.

      4.     J. Raul Rodriguez, M.D. and Juan I. Rodriguez, M.D. ("Plaintiffs") entered into a lease with Columbia Valley Regional Medical Center (the "Hospital") on May 19, 1997 (the "Lease"). A true and correct copy of the Lease is attached to my affidavit at Exhibit 1.

5.    The Lease was assigned to Medcap on July 1, 2000 (the "Assignment"). A true and correct copy of the relevant pages from the Assignment is attached to my affidavit as <u>Exhibit 2</u>.

6.    On or about February 15, 2002, I received a letter from Plaintiffs' counsel, Ricardo M. Adobbati. A true and correct copy of the February 15, 2002 letter I received from Mr. Adobbati is attached to my affidavit as <u>Exhibit 3</u>. In his letter, Mr. Adobbati asserts that Plaintiffs incurred damages of $14,000 for supplies and equipment allegedly ruined as a result of a water leak at the lease premises on January 21, 2002. Mr. Adobbati also asserts in his letter that Plaintiffs are seeking eleven days of business interruption damages in the amount of $73,567.17. *Id.*

FURTHER AFFIANT SAITH NOT.

ANGELA PLAYLE

SUBSCRIBED AND SWORN TO BEFORE ME on the 12th day of August, 2002.

Notary Public Signature

(PERSONALIZED SEAL)



My Commission Expires MAY 28, 2006



# MEDICAL OFFICE BUILDING LEASE

A-625 11/93

THIS LEASE is made and entered into this ___19th___ day of ___May_____, 1997, by and between COLUMBIA VALLEY

REGIONAL MEDICAL CENTER, or its assigns ("Landlord"), and _J. Raul Rodriguez, M.D. and Jaun I_

_Rodriguez, M.D._____ ("Tenant").

Landlord, in consideration of the rents to be paid and the covenants and agreements to be performed by Tenant as hereinafter set forth, hereby leases to Tenant and Tenant hereby leases from Landlord approximately 3,600 usable square feet of space as shown on the floor plan attached hereto as Addendum "A" (the "Premises"), on the ___first___ floor in the building ("Building") to be constructed on the campus of the Columbia Valley Regional Medical Center, Brownsville, Texas, for the term and upon the conditions and agreements hereinafter set forth ("Lease"). This Lease shall constitute a binding agreement between the parties effective as of the date set forth above, which shall be added by either Landlord or Tenant, whichever party is last to sign the Lease ("Effective Date"). On or about the Commencement Date (as defined below), the architect or space designer preparing the schematic drawings for the interior improvements for the Premises will deliver to Landlord and Tenant a statement of the usable square footage of the Premises and the amount of usable square footage set forth on such statement shall be deemed to be the usable square footage of the Premises for all purposes under this Lease.

## ARTICLE I.   TERM

The term of this Lease shall begin on the "Commencement Date" (Commencement Date being defined as the ___later___ of (i) the date Tenant occupies the Premises, or (ii) the date of issuance of the Certificate of Occupancy for the Premises) and terminate approximately five (5) years thereafter on the ___31st___ day of ___July_____, 2003 ("Primary Term"). Landlord estimates that the Commencement Date will occur on or about ___August 1___, 19 98. "Lease Year" shall be defined as each twelve consecutive month period throughout the Term, beginning on the Commencement Date and each anniversary thereof. ((iii)) date of tenant's performance of major surgery at newly constructed hospital.

## ARTICLE II.   RENT

1. Base Rent. During the Term, Tenant shall pay to Landlord the base rent as determined pursuant to Schedule A below, multiplied by the number of usable square footage of the Premises ("Base Rent"). The Base Rent and any Additional Rent as provided in below shall be payable in monthly installments in advance without notice, demand, setoff or deduction, with the first installment being due on the Commencement Date and, thereafter, the monthly installments shall be due on the first day of each calendar month. If the Premises are occupied for a fraction of a month at the beginning or the end of the Term, Tenant shall pay a proportionate part of the applicable monthly installment.

### SCHEDULE A

| Annual Base Rent(1) | x | Usable Square Footage (2) | = | Total Annual Base Rent (2) | Monthly Base Rent Installment(3) |
|---|---|---|---|---|---|
| $15.50/u.s.f. | | $ 3,600 | | $ 55,800.00 | $ 4,650.00 |

(1) The Base Rent set forth in this Schedule A is subject to increases as a result of increases in the cost of living during the Term. On the first day of each January during the term of this Lease (each an "Adjustment Date"), the Base Rent shall be adjusted to reflect the increase, if any, in the cost of living over the preceding calendar year. The Base Rent due as a result of an increase in the cost of living shall be calculated in accordance with the terms set forth below. The basis for computing the cost of living shall be the unadjusted Consumer Price Index for all Urban Consumers, All items (1982-84 = 100) published by the Bureau of Labor Statistics of the United States Department of Labor ("Index"). The Index for the second November (month) preceding the Adjustment Date shall be the "Base Index Number". The Index for the November (month) immediately preceding the Adjustment Date shall be the "Current Index Number". The Base Rent for the calendar year commencing on such Adjustment Date shall be the product obtained from multiplying the Base Rent (annualized) for the year immediately preceding the Adjustment Date by the fraction whose numerator is equal to the Current Index Number and whose denominator is equal to the Base Index Number. If the aforesaid Index is not in existence at the time the determination is to be made, the parties shall use such equivalent price index as is published by a successor government agency in lieu of the Index; or, if no such price index is published, then the parties shall use a mutually acceptable equivalent price index as is published by a non-governmental agency.

(2) The above square footage is an estimate. Actual usable square footage for the Premises will be determined pursuant to Section 1 above, which determination may result in an increase or decrease in the amount of annual Base Rent and monthly Base Rent shown hereon.

Medical Office Building Lease
64-125 11/93
Page 2

Additional Rent.  In addition to the Base Rent reserved in herein, Tenant shall pay Landlord "Additional Rent", which term shall be defined to include the following: (1) any sum owed for costs incurred by Landlord which are in excess of the sum of any interior improvement allowance upon which Landlord and Tenant have agreed; (2) any sum owed for utilities or as a "Surcharge" (as defined in Article VI; and (3) any other sums owed by Tenant in connection with Tenant's occupancy of the Premises.  For purposes of this Lease, Base Rent and Additional Rent shall hereinafter be collectively referred to as "Rent".

ARTICLE III.   SECURITY DEPOSIT

*which shall be applied to first month's rent.*

Tenant has deposited with Landlord the sum of $ 3,600.00 as security for the full and faithful performance by Tenant of all of Tenant's obligations hereunder.  No interest shall be paid upon the security deposit nor shall Landlord be required to maintain the deposit in a segregated account.  The security deposit shall not be construed as prepaid rent.  In the event that Tenant shall default in the full and faithful performance of any of the terms hereof, then Landlord may, without notice, either retain the security deposit as liquidated damages, or Landlord may retain the same and apply it toward any damages sustained by Landlord, including but not limited to actual damages sustained by the Landlord by reason of the default of Tenant, including any past due rent.  In the event of bankruptcy or other debtor-creditor proceedings, either voluntarily or involuntarily instituted by or against Tenant, the security deposit shall be deemed to be applied in the following order: to actual damages; obligations and other charges, including any damages sustained by Landlord, other than unpaid rent, due to Landlord for all periods prior to the filing of such proceedings; to accrued and unpaid rent prior to the filing of such proceeding; and thereafter to actual damages, obligations, other charges and damages sustained by Landlord and rent due Tenant Landlord for all periods subsequent to such filing.  In the event of a sale of all or any portion of the Premises, Landlord shall have the right to transfer the security deposit to the buyer, and Landlord shall thereupon be relieved of all obligations to return the security deposit to Tenant, and Tenant agrees to look solely to the buyer for the return of the security deposit.  If Tenant fully and faithfully complies with all of the terms hereof, the security deposit or any balance thereof shall be returned to Tenant within thirty (30) days after expiration of this Lease, including any renewal thereof.  Notwithstanding anything to the contrary set forth herein above, Landlord may elect to apply the security deposit towards the payment of the first month's Rent due under this Lease.

ARTICLE IV.   USE OF PREMISES

*Except procedures limited to local anesthetics*

The Premises shall continuously and at all times during the Term be used and occupied by Tenant only as medical offices for licensed physicians ("Physicians") to engage in the private practice of medicine and other related activities incidental thereto, and for no other purpose; provided that the provision or operation of any ancillary medical care service or facility shall not be permitted in the Premises.  As used herein, an "ancillary medical care service or facility" shall mean and include (x) any form of testing for diagnostic or therapeutic purposes, provision or operation of a laboratory (including, without limitation, a pathology laboratory or a clinical laboratory), any form of diagnostic imaging services (which include, without limitation, the following testing facilities:  fluoroscopy, x-ray, plane film radiography, computerized tomography (CT) ultrasound, mammography and breast diagnostics, nuclear medicine testing and magnetic resonance imaging), radiation therapy, physical therapy services, respiratory therapy service, outpatient or inpatient surgery, outpatient or inpatient birthing services, home health services, a health maintenance organization or similar direct care provider and/or inhalation therapy and (y) the provision of any medical care related service to or for any person that is in addition to the examination and diagnosis of patients performed directly by a Physician or by other health care professionals under the direct supervision of a Physician, or a facility operated for the provision of any such service; provided, however, any laboratory or x-ray services or procedures provided to patients of Physicians occupying the Premises shall not be prohibited as an ancillary medical care service or facility if (a) such patients were not referred to such Physicians for the purpose of obtaining such services or procedures, and (b) prior to providing such services or procedures, Tenant shall have submitted to Landlord a detailed description of the laboratory or x-ray services or procedures Tenant desires to provide or perform and Landlord shall have consented in writing to the provision or performance of such services or procedures, which consent may be denied in Landlord's sole and absolute discretion (the provision of such services and procedures shall be solely limited to those services and procedures to which Landlord has expressly consented in writing and the terms of this paragraph shall be strictly construed to prohibit any expansion or addition to such services or procedures without Landlord's written consent).  Tenant shall not dispense any drugs or medicines to persons other than Tenant's own patients.  The Premises shall not be used as a clinic for treatment of acquired immune deficiency syndrome or similar disease.  Prior to the installation of any diagnostic, laboratory or radiology equipment in the Premises, Tenant shall provide Landlord with a list of such equipment; a list of any hazardous substances, wastes or materials, as hereinafter defined, which will be used or generated in connection with the use of such diagnostic, laboratory or radiology equipment; and Tenant's proposed procedures for the use, storage and disposal of any hazardous substances, wastes or materials, including but not limited to the procedure for silver recovery for any radiology equipment.

Tenant covenants that Tenant and all physician-members, physician-owners and physician-employees of Tenant using the Premises shall be and remain members in good standing on the medical staff of Columbia Valley Regional Medical Center.  Landlord and Tenant acknowledge and agree that neither Tenant nor any physician-member, physician-owner or physician-employee of Tenant shall be required, either directly or indirectly, to refer any patients to or to order or purchase any item or service from Landlord or any entity affiliated with Landlord.

Tenant shall act in accordance with and not violate any restrictions or covenants of record affecting the Premises or the Building.  Tenant shall not use or occupy the Premises in violation of law or of the Certificate of Use or Occupancy issued for the Building of when the Premises are a part, and shall immediately discontinue any use of the Premises which is declared by either any governmental authority having jurisdiction or the Landlord to be a violation of any law, code, regulation or a violation of said Certificate of Use or Occupancy.  Tenant shall comply with any direction of any governmental authority having jurisdiction which shall, by reason of the nature of Tenant's

10172845
15030017



e or occupancy of the Premises, impose any duty upon Tenant or Landlord with respect to the Premises or with respect to the use or cupency thereof.

Tenant shall not do nor permit to be done anything which will invalidate or increase the cost of any casualty and extended coverage surance policy covering the Building and/or property located therein, and shall comply with all rules, orders, regulations and requirements the appropriate Fire Rating Bureau or any other organization performing a similar function. Tenant shall promptly upon demand reimburse ndlord for any additional premium charged for such policy by reason of Tenant's failure to comply with the provisions of this paragraph. nant shall not do or permit anything to be done in, on or about the Premises which would in any way obstruct or interfere with the rights other tenants or occupants of the Building, or use or allow the Premises to be used for any immoral, unlawful or objectionable purpose, or shall Tenant maintain or permit any nuisance or commit or suffer to be committed any waste in, on or about the Premises.

Tenant shall not cause or permit the release or disposal of any hazardous substances, wastes or materials, or any medical, special infectious wastes, on or about the Premises or the Building of which they are a part and Tenant shall be solely responsible for and shall omptly pay the cost of removing all such hazardous substances, wastes and materials and any such medical, special and infectious waste om the Premises, which removal shall be in accordance with all applicable governmental requirements. Hazardous substances, wastes materials shall include those which are defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, s amended, 42 USC Section 9601 et seq; the Resource Conservation and Recovery Act, as amended, 42 USC Section 6901 et seq; the oxic Substances Control Act, as amended, 15 USC Section 2601 et seq; and medical, special or infectious wastes shall include those which e defined pursuant to the medical waste regulations which have been promulgated by the state in which the Premises are located, and s further set forth in any state or local laws and ordinances, and their corresponding regulations. Tenant shall comply with all rules and olicies set by Landlord, and with all federal, state and local laws, regulations and ordinances which govern the use, storage, handling or isposal of hazardous substances, wastes or materials and medical, special or infectious wastes. Tenant shall indemnify, defend and hold andlord harmless from and against any claims or liability arising out of or connected with Tenant's failure to comply with the terms of this rticle IV, which terms shall survive the expiration or earlier termination of this Lease.

Landlord, may at its option, terminate this Lease in the event Tenant engages in a prohibited use or otherwise violates the terms of his Article IV and fails to cure such violation within thirty (30) days following Tenant's receipt of written notice thereof from Landlord.

## ARTICLE V.   UTILITIES AND BUILDING SERVICES

All utilities for the Premises which are not separately metered as well as all utilities for the common areas of the Building will be paid or by Landlord. Heat and air-conditioning required to be furnished by Landlord will be furnished whenever the same shall, in Landlord's easonable judgment, be required for Tenant's comfortable use and occupancy of the Premises during reasonable business hours. If Tenant equires or utilizes more water or electric power than is considered reasonable or normal by Landlord, Landlord may reasonably determine nd require Tenant to pay as Additional Rent, the cost incurred as a result of such additional usage ("Surcharge"). Tenant agrees to pay ll separately metered utilities required and used by Tenant in the Premises. Landlord reserves the privilege of stopping any or all utility ervices in case of accident or breakdown, or for the purpose of making alterations, repairs or improvements, and shall not be liable for the ailure to furnish or delay in furnishing any or all of such services when same is caused by or is the result of strikes, labor disputes, labor, uel or material scarcity, or governmental or other lawful regulations or requirements, or the failure of any corporation, firm or person with whom the Landlord may contract for any such service, or for any service incident thereto, to furnish same, or is due to any cause other than he gross negligence of the Landlord; and the failure to furnish any of such services in such event shall not be deemed or construed as an viction or relieve Tenant from the performance of any of the obligations imposed upon Tenant by this Lease. Landlord shall not be esponsible to the Tenant for loss of property in or from the Premises, or for any damage done to furniture, furnishings or affects therein, however occurring, except where such damages occur through the gross negligence of Landlord, nor shall Landlord be responsible should any equipment or machinery break down or for any cause cease to function properly on account of any such interruption of service. Tenant shall be solely responsible for and shall promptly pay all charges for telephone and other communication services.

daily

Landlord will provide general janitorial services in and about the common areas of the Building as necessary or desirable in Landlord's reasonable judgment. Landlord also will provide general janitorial and cleaning services for the Premises as Landlord deems necessary in its reasonable discretion. Tenant, at Tenant's sole cost and expense, shall be responsible for providing medical, special and infectious waste removal from the Premises. Tenant shall keep all refuse in proper containers until disposal of such refuse. Tenant shall not permit the mixing or disposal of any hazardous substances, wastes or materials or any medical, special or infectious waste (as such terms are defined in Article IV) with the general office refuse and Landlord shall have no duty or obligation to remove any hazardous substances, wastes or materials or any medical, special or infectious waste from the Premises.

## ARTICLE VI.   ALTERATIONS

Tenant may not make any changes, additions, alterations, improvements or additions to the Premises or attach or affix any articles thereto without Landlord's prior written consent. All alterations, additions, or improvements which may be made upon the Premises by Landlord or Tenant (except unattached trade fixtures and office furniture and equipment owned by Tenant) shall not be removed by Tenant, but shall become and remain the property of Landlord. All alterations, improvements, and additions to the Premises (as permitted by Landlord) shall be done only by Landlord or contractors or mechanics approved by Landlord, and shall be at Tenant's sole expense and it

GA-625 11/93
Page 6

such times and in such manner as Landlord may approve. If Tenant shall make any alterations, improvements or additions to the Premises, Landlord may require Tenant, at the expiration of this Lease, to restore the Premises to substantially the same condition as existed at the commencement of the Term. Any mechanic's or materialmen's lien for which Landlord has received a notice of intent to file or which has been filed against the Premises or the Building arising out of work done for, or materials furnished to Tenant, shall be discharged, bonded over, or otherwise satisfied by Tenant within ten (10) days following the earlier of the date Landlord receives (1) notice of intent to file a lien or (2) notice that the lien has been filed. If Tenant fails to discharge, bond over, or otherwise satisfy any such lien, Landlord may do so at Tenant's expense, and the amount expended by Landlord, including reasonable attorneys' fees, shall be paid by Tenant within ten (10) days following Tenant's receipt of a bill from Landlord.

*to the extent that Tenant or its employees is liable*

ARTICLE VII.   DAMAGE TO PROPERTY - INJURY TO PERSONS   *to the extent that Tenant controls or permits such activity, work, etc.*

Tenant shall and hereby does indemnify and hold Landlord harmless from and against any and all claims arising from: 1.) Tenant's use of the Premises or the conduct of Tenant's business or profession; 2.) any activity, work, or thing done, permitted or suffered by the Tenant in or about the Premises, the Building or the common areas; 3.) any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of this Lease; or 4.) any negligent acts or omissions of Tenant, or of Tenant's agents or employees. Tenant shall and hereby does further indemnify, defend and hold Landlord harmless from and against all costs, attorneys' fees, expenses and liabilities incurred in connection with any such claim or any action or proceeding brought thereon. In case any action or proceeding is brought against Landlord by reason of any such claim, Tenant upon notice from Landlord, shall defend same at Tenant's expense by counsel reasonably satisfactory to Landlord. Tenant, as a material part of the consideration to Landlord, hereby assumes all risk of damage to property or injury to persons in, upon or about the Premises from any cause other than Landlord's gross negligence, and Tenant hereby waives all claims in respect thereof against Landlord.   *in proportion to Tenant's responsibilities*

*$100,000* *See occ...*

During the term hereof Tenant shall maintain comprehensive general liability insurance on the Premises of at least $1,000,000 per occurrence, $3,000,000 aggregate. Tenant shall also maintain All Risk (as defined in Article XXI [v]) property insurance on all property owned or used by Tenant in the Premises. Landlord shall be named as an additional insured on all policies of insurance required pursuant to this Article VII. As evidence of the insurance required under this Article VII, Tenant shall provide to Landlord Certificates of Insurance evidencing such coverage during the Term on or before the Commencement Date and each anniversary of the Commencement Date and at such other times as requested by Landlord.

Neither Landlord nor its agents shall be liable for any damage to property entrusted to employees of the Building, nor for loss of or damage to any property by theft or otherwise, nor for any injury or damage to persons or property resulting from fire, explosion, falling plaster, steam, gas, electricity, water or rain which may leak from any part of the Building or from the pipes, appliances or plumbing works therein or from the roof, street or subsurface, or from any other place or resulting from dampness or any other cause whatsoever, unless caused by or due to the gross negligence of Landlord, its agents, servants or employees. Neither Landlord nor its agents shall be liable for any latent defect in the Premises or in the Building. Tenant shall give prompt notice to Landlord in case of fire or accidents in the Premises or in the Building or of defects therein or in the fixtures or equipment. Tenant hereby acknowledges that Landlord shall not be liable for any interruption to Tenant's business for any cause whatsoever, and that Tenant shall obtain Business Interruption Insurance coverage should Tenant desire to provide coverage for such risk.

## ARTICLE VIII.   DAMAGE OR DESTRUCTION

If the Premises are damaged by fire or other casualty (collectively "Casualty"), the damage shall be repaired by and at the expense of Landlord, provided such repairs can, in Landlord's opinion, be made within sixty (60) days after the occurrence of such Casualty without the payment of overtime or other premiums. If such repairs cannot, in Landlord's opinion, be made within sixty (60) days, Landlord may, at its option, make them within a reasonable time, and in such event this Lease shall continue in effect. Landlord's election to make such repairs must be evidenced by written notice to Tenant within thirty (30) days after the occurrence of the damage. If Landlord does not so elect to make such repairs which cannot be made within sixty (60) days, then either party may, by written notice to the other, cancel this Lease as of the date of the Casualty. A total destruction of the Building in which the Premises are located shall automatically terminate this Lease. In the event Landlord makes such repairs and such repairs are not completed within one hundred twenty (120) days after the Casualty, then for the period after such 120th day until such repairs are completed, the Rent shall be abated in proportion to the part of the Premises which is unusable by Tenant in the conduct of Tenant's practice of medicine. However, there shall be no abatement of Rent if the Casualty is due to the negligent acts or omissions of Tenant or Tenant's employees.

*with final costs to be proportional between landlord and Tenant according to their respective responsibilities.*

10172B45
15030017

Medical Office Building Lease
GA-625  11/93
Page 5

ARTICLE IX.   EMINENT DOMAIN

If the whole of the Premises or so much thereof as to render the balance unusable by Tenant shall be taken under power of eminent domain, this Lease shall automatically terminate as of the date of such condemnation, together with any and all rights of Tenant existing or hereafter arising in or to the same or any part thereof; provided, however, that nothing contained herein shall be deemed to give Landlord any interest in or require Tenant to assign to Landlord any award expressly made to Tenant for: 1.) the taking of personal property and fixtures belonging to Tenant; 2.) the interruption of or damage to Tenant's business or profession; 3.) the cost of relocation expenses incurred by Tenant; and 4.) Tenant's unamortized cost of leasehold improvements. In the event of a partial taking which does not result in a termination of the Lease, the Rent shall be apportioned according to the part of the Premises remaining usable by Tenant. Landlord may without any obligation or liability to Tenant stipulate with any condemning authority for a judgment of condemnation without the necessity of a formal suit or judgment of condemnation, and the date of taking under this clause shall then be deemed the date agreed to under the terms of said agreement or stipulation.

ARTICLE X.   ASSIGNMENT AND SUBLETTING .

Any attempted assignment, subletting or use of the Premises by any person or entity other than Tenant, in whole or in part, shall be void and shall constitute a default hereunder by Tenant, unless Tenant shall have obtained the prior written consent of Landlord which consent may be withheld in Landlord's sole discretion, and unless the assignee or sublessee shall have expressly assumed in writing all obligations of Tenant hereunder. Any sale, transfer, assignment or other conveyance of forty-nine percent (49%) or more of the legal or beneficial ownership interest in Tenant shall constitute an assignment for the purposes of this paragraph. If this Lease is assigned, or if the Premises or any part thereof are sublet to or occupied by any person or entity other than Tenant, Landlord may collect rent from the assignee, sublessee or occupant and apply the net amount collected to the rent herein reserved, but no such assignment, subletting, occupancy or collection shall be deemed a wavier of this covenant or an acceptance of the assignee, sublessee or occupant as a lessee, nor shall the same release Tenant from the further performance by Tenant of the covenants on the part of Tenant herein contained. Any violation of any provision of this Lease, whether by act or omission by any assignee, sublessee or occupant, shall be deemed a violation of such provision by Tenant, it being the agreement that Tenant shall assume and be liable to Landlord for any and all acts and omissions of any and all assignees, sublessees and occupants. Tenant shall reimburse Landlord for all attorneys' fees related to the performance of legal services in connection with the approval of any assignment or subletting, the amount of such reimbursement to be such reasonable amount as may be paid by Landlord.

ARTICLE XI.   CONSTRUCTION OF INTERIOR IMPROVEMENTS

Landlord agrees to construct improvements to the Premises in substantial conformance with the plans and specifications to be prepared by Landlord and approved by Tenant (in regard to the Interior Improvements listed on Addendum "B" only and not in regard to the Building). Tenant understands dimensions to be shown in the plans and specifications, and in any leasing brochure, are approximate and may change due to field conditions. Tenant understands any existing model may contain items or special features which are not included in the Premises, such as furnishings and decorations, accessories, drapes, blinds or other window treatments, upgraded carpeting and flooring, wallpaper, panelling and other special wall treatments, upgraded fixtures and special lighting effects, mirrors, intercoms and extra or upgraded appliances. Tenant understands that Landlord's obligations hereunder only include those Interior Improvements listed on Addendum "B" of this Lease (not to exceed the Interior Improvement Allowance, as more particularly described in Addendum "B"). Tenant acknowledges and agrees that Landlord reserves the right, without Tenant's consent and without liability to Tenant, to make any modifications, changes or omissions to the aforesaid plans and specifications, as long as same does not substantially and adversely affect Tenant. Tenant further acknowledges and agrees that Landlord reserves the right, without Tenant's consent and without liability to Tenant, to make any modification, changes or omissions to the aforesaid plans and specifications, if same are required by any governmental or quasi-governmental authority or utility. Tenant also acknowledges and agrees that Landlord may, regarding the Premises, substitute materials, equipment, cabinets, fixtures, appliances, and/or floor coverings with items of similar or greater quality, utility, value, and/or color without Tenant's consent and without liability to Tenant. Tenant understands the location of telephone, electric and other utility outlets are subject to change. Tenant understands materials such as brick, wood, woodgrain, carpeting, paint, cabinets, cultured marble, tile, mica, and the like, are subject to shading and gradation and may vary from samples, models or color charts, and from piece to piece, and Landlord will not be liable for such variation. Tenant acknowledges and agrees that Landlord will have complete discretion in "finishing details."

1.   Change Orders and Extras.  All change orders or extras Tenant desires must be agreed to by Landlord in writing. Tenant will pay one hundred percent (100%) of the cost of any change or extra at such time as Tenant is instructed by Landlord to pay same. If Landlord omits any changes or extras, Landlord's only liability to Tenant will be to refund to Tenant the amount Tenant paid to Landlord for each item omitted. Except for such omissions, Tenant's payment for any change orders or extras are not refundable.

10172845
15030017

Medical Office Building Lease
GA-625 11/93
Page 6

2. **Completion.** Landlord anticipates the Premises will be completed by the estimated Commencement Date set forth in Article I, but Tenant understands Landlord cannot guarantee completion by that date. Tenant acknowledges and agrees that completion of the Premises may be delayed by (i) changes ordered in the work; (ii) any combination action of workman (either those employed on the project or in any industry essential to the conduct of the work) such as strikes, embargoes, or lockouts or by (iii) fire; (iv) unavoidable casualties; (v) acts of government; (vi) acts of God; (vii) shortage of materials, energy, fuel, equipment, facilities or labor; or (viii) by other causes that are beyond Landlord's control and Tenant agrees that completion of the Premises and the Commencement Date will be extended accordingly. Landlord will not be liable for any delays in completion of the Premises or in the Commencement Date and Landlord will not have to make, provide or compensate Tenant for any accommodations or costs as a result of any delays, and any delays will not permit Tenant to cancel or amend this Lease, or diminish any of Tenant's obligations under this Lease. Tenant acknowledges and agrees that the granting of any limited right of possession or access by Landlord to Tenant prior to the Commencement Date shall not constitute a waiver by Landlord of any of Landlord's rights or Tenant's obligations under this Lease.

3. **Interference with Construction.** Prior to the Commencement Date, Tenant shall not put any property in the Premises or enter into or upon the Premises or interfere with the progress of construction or with workmen, and Tenant shall not permit such entry or interference by others. Landlord will not be liable for any injury resulting from Tenant's breach of this paragraph.

4. **Conditions.** If a casualty occurs to the Premises and/or the Building prior to the Commencement Date, Landlord may at Landlord's option either cancel this Lease, in which event this Lease shall become void and of no effect, or rebuild as soon as possible, in which event this Lease shall remain in full force and effect. However, under no circumstances shall Tenant have any interest in any insurance proceeds attributable to said casualty. If Landlord cannot obtain all utilities, permits and authorizations necessary to construct the Building and/or the interior improvements in accordance with the plans and specifications therefor and in a reasonable time, Landlord may terminate this Lease.

## ARTICLE XII.  DEFAULTS

The occurrence of any of the following shall constitute a material default and breach of the Lease:

1. The vacating or abandonment of the Premises by Tenant.

2. A failure by Tenant to pay the Rent or to make any other payment required to be made by Tenant hereunder within ten (10) days after same is due and payable.

3. A failure to maintain the insurance required pursuant to Article VII of this Lease.

4. A violation of the terms of Article X of this Lease.

5. A failure to provide any declaration, document or instrument required pursuant to Article XVIII of this Lease within the time period set forth in such Article.

6. A failure by Tenant to observe and perform any other obligation under this Lease to be observed or performed by Tenant within thirty (30) days after written notice by Landlord to Tenant specifying wherein Tenant has failed to perform such obligation.

7. The making by Tenant or any guarantor of this Lease of any general assignment for the benefit of creditors; the filing by or against Tenant or such guarantor of a petition to have Tenant or such guarantor adjudged a bankrupt or the filing of a petition for reorganization or arrangement under any law relating to bankruptcy (unless, in the case of a petition filed against Tenant or such guarantor, the same is dismissed within sixty (60) days); the appointment of a trustee or receiver to take possession of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease, where possession is not restored to Tenant within thirty (30) days; or the attachment, execution or other judicial seizure of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease, where such seizure is not discharged within thirty (30) days.

Landlord shall not be deemed to be in default in the performance of any obligation required to be performed by it hereunder unless and until it has failed to perform such obligation within thirty (30) days after written notice by Tenant to Landlord specifying wherein Landlord has failed to perform such obligation. Provided, however, that if the nature of Landlord's obligation is such that more than thirty (30) days are required for its performance, then Landlord shall not be deemed to be in default if it shall commence such performance within such thirty (30) day period and thereafter diligently prosecute the same to completion.

10172845
15030017

Medical Office Building Lease
GA-625 11/93
Page 7

## ARTICLE XIII.   REMEDIES

In the event Tenant commits an act of default as set forth in Article XII, Landlord may exercise one or more of the following described remedies, in addition to all other rights and remedies available at law or in equity, whether or not stated in this Lease.

1.   Landlord may continue this Lease in full force and effect and shall have the right to collect Rent when due. During the period Tenant is in default, Landlord may re-enter the Premises with or without legal process and relet them, or any part of them, to third parties for Tenant's account, and Tenant hereby expressly waives any and all claims for damages by reason of such re-entry, as well as any and all claims for damages by reason of any distress warrants or proceedings by way of sequestration which Lessor may employ to recover said rents. Tenant shall be liable immediately to Landlord for all costs Landlord incurs in reletting the Premises, including, without limitation, brokers' commissions, expenses of remodeling the Premises required by the reletting, and like costs. Reletting can be for a period shorter or longer than the remaining Term of this Lease, and in no event shall Landlord be under any obligation to relet the Premises. On the dates such rent is due, Tenant shall pay to Landlord a sum equal to the Rent due under this Lease, less the rent Landlord receives from any reletting. No act by Landlord allowed by this paragraph shall terminate the Lease unless Landlord notifies Tenant in writing that Landlord elects to terminate the Lease.

2.   Landlord may terminate this Lease at any time. Upon termination, Landlord shall have the right to collect an amount equal to: all expenses incurred by Landlord in recovering possession of the Premises, including reasonable attorneys' fees; all reasonable costs and charges for the care of the Premises while vacant; all renovation costs incurred in connection with the preparation of the Premises for a new tenant; and an amount by which the entire Rent for the remainder of the Term exceeds the loss of Rent that Tenant proves could have been reasonably avoided.

Should any of these remedies, or any portion thereof, not be permitted by the laws of the state in which the Building is situate, then such remedy or portion thereof shall be considered deleted and unenforceable, and the remaining remedies or portions thereof shall be and remain in full force and effect. Landlord may avail itself of these as well as any other remedies or damages allowed by law. All rights, options and remedies of Landlord provided herein or elsewhere by law or in equity shall be deemed cumulative and not exclusive of one another.

## ARTICLE XIV.   RULES AND REGULATIONS

Tenant shall observe faithfully and comply strictly with the Rules and Regulations set forth on Addendum "C" attached to this Lease and made a part hereof, and such other rules and regulations as Landlord may from time to time reasonably adopt for the safety, care and cleanliness of the Building or the preservation of good order therein. Landlord shall not be liable to Tenant for violation of any such Rules and Regulations, or for the breach of any covenant or condition in any lease by any other tenant in the Building. By the signing of this Lease, Tenant acknowledges that Tenant has read and has agreed to comply with such Rules and Regulations.

## ARTICLE XV.   RIGHT OF ACCESS

Upon reasonable notice to Tenant, Landlord and its agents shall have free access to the leased Premises during all reasonable hours for the purpose of inspection, to make reasonable repairs as required hereunder (provided, however, Landlord shall have no obligation as a result of such examination to make any repairs other than expressly set forth herein), and to exhibit the same to prospective purchasers or tenants. Landlord and its agents shall have access to the Premises at any time without prior notice in the event of an emergency.

## ARTICLE XVI.   END OF TERM

At the termination or expiration of the term of this Lease, Tenant shall surrender the premises to Landlord in as good condition and repair as at the Commencement Date, reasonable wear and tear excepted, and will leave the Premises broom-clean. If not then in default, Tenant shall have the right prior to said termination to remove any equipment, furniture, trade fixtures or other personal property placed in the Premises by Tenant, provided that Tenant promptly repairs any damage to the Premises caused by such removal.

In the event of holding over by Tenant after the expiration of this Lease, Tenant shall pay a sum equal to two times the sum of the monthly installment of Rent which is in effect at the expiration of the Lease. Any holding over with the written consent of Landlord shall thereafter constitute a tenancy at sufferance.

10172845
15030017

Medical Office Building Lease
IA-625  11/93
Page 8

### ARTICLE XVII.   TRANSFER OF LANDLORD'S INTEREST

In the event of any transfer or transfers of Landlord's interest in the Premises or in the real property of which the Premises are a part, the transferor shall be automatically relieved of any and all obligations and liabilities on the part of Landlord accruing from and after the date of such transfer.

### ARTICLE XVIII.   ESTOPPEL CERTIFICATE, ATTORNMENT, AND NON-DISTURBANCE

Within ten (10) days following receipt of Landlord's written request, Tenant shall deliver, executed in recordable form, a declaration to any person designated by Landlord: (a) ratifying this Lease; (b) stating the commencement and termination dates of the Lease; and (c) certifying (i) that this Lease is in full force and effect and has not been assigned, modified, supplemented or amended (except by such writings as shall be stated), (ii) that all conditions under this Lease to be performed by Landlord have been satisfied (stating exceptions, if any); (iii) that no defenses, credits or offsets against the enforcement of this Lease by Landlord exist (or stating those claimed); (iv) the sum of advance Rent, if any, paid by Tenant; (v) the date to which Rent has been paid; (vi) the amount of security deposited with Landlord, and such other information as Landlord reasonably requires.  Persons receiving such statements shall be entitled to rely upon them.

Tenant shall, in the event of a sale or assignment of Landlord's interest in the Premises or the Building or this Lease, or if the Premises or the Building comes into the hands of a mortgagee, ground lessor or any other person whether because of a mortgage foreclosure, exercise of a power of sale under a mortgage, termination of the ground lease, or otherwise, attorn to the purchaser or such mortgagee or other person and recognize the same as Landlord hereunder, provided such purchaser, mortgagee or other person shall warrant and defend Tenant in the quiet enjoyment and possession of the Premises for the duration of the Term, subject to the terms and conditions of this Lease. Tenant shall execute, at Landlord's request, any reasonable attornment agreement required by any mortgagee, ground lessor or other such person to be executed, and containing such provisions as such mortgagee, ground lessor or other person requires.

Except as otherwise stated herein, this Lease shall be subject to and subordinate and inferior at all times to the lien of any mortgage, to the lien of any deed of trust or other method of financing or refinancing now or hereafter existing against all or a part of the real property upon which the Building is located, and to any lease by which Landlord leases the Building or the ground upon which the Building is located, and to all renewals, modifications, replacements, consolidations and extensions of any of the foregoing. Tenant shall execute and deliver all documents requested by any mortgagee, security holder or lessor to effect such subordination. If Tenant fails to execute and deliver any such document requested by a mortgagee, security holder or lessor to effect such subordination, Landlord is hereby authorized to execute such documents and take such other reasonable steps as are necessary to effect such subordination on behalf of Tenant as Tenant's duly authorized irrevocable agent and attorney-in-fact, it being agreed that such power is one coupled with an interest. Tenant's failure to execute and deliver such documents or instruments provided for in this Article XVIII within fourteen (14) days after the receipt by Tenant of a written request shall constitute a default under this Lease.

### ARTICLE XIX.   NOTICES

Any notice required or permitted to be given hereunder shall be in writing and may be given by: (1) hand delivery and shall be deemed given on the date of delivery; (2) registered or certified mail and shall be deemed given the third day following the date of mailing; or (3) overnight delivery and shall be deemed given the following day.

All notices to Tenant shall be addressed to Tenant at the Building of which the Premises are a part and to Landlord as follows:

Columbia Valley Regional Medical Center
1 Ted Hunt Blvd.
Brownsville, Texas 78521
Attention:  Administration

With a copy to:   Columbia/HCA Healthcare Corporation
One Park Plaza
Nashville, TN 37203
Attention:  Vice-President, Real Estate

### ARTICLE XX.   TERMINATION AS A RESULT OF DEATH OR DISABILITY

Provided that Tenant is a sole practitioner or a professional corporation with one shareholder, and provided that Tenant, at the time of such practitioner's or shareholder's death, is not in default under any term or condition of this Lease, the legal representative of his/her estate shall have the right to terminate this Lease.  Notice of termination being given as a result of death shall be effective only if it is in writing.  Tenant and his/her estate shall be liable for the Rent due under this Lease through the end of the calendar month in which such

10172845
15030017

Medical Office Building Lease
GA-625  11/93
Page 9

notice of termination is received by Landlord, and shall remain liable for the Rent until such date that all of Tenant's personal property, equipment and fixtures are removed from the Premises, as provided in Articles VI and XVI of this Lease.

The right of termination shall also exist if such practitioner or shareholder is medically determined to be permanently unable to practice medicine as a result of a permanent physical disability. Tenant shall provide Landlord with written notice thirty (30) days prior to the date of termination, and Tenant shall be liable for the Rent due under this Lease throughout such thirty (30) day period, and shall remain liable until such date that all of Tenant's personal property, equipment and fixtures are removed from the Premises, as provided in Articles VI and XVI of this Lease.

In the event Tenant is a partnership or a corporation with multiple shareholders, Tenant shall be released from the Lease only if such death or disability effects a dissolution of the partnership or corporation as set forth in the applicable partnership or corporate documents.

In the event the Lease has been executed by two or more persons, only the deceased or disabled person shall be released from the Lease.

ARTICLE XXI.   MISCELLANEOUS PROVISIONS

(i)   ATTORNEYS' FEES  In the event that suit is brought by either party against the other for a breach or default under the terms of this Lease, the prevailing party shall be entitled to reasonable attorneys' fees, which sum shall be fixed by the court.

(ii)   TIME OF ESSENCE  Time is of the essence with respect to the performance of every provision of this Lease.

(iii)   HEADINGS  The article captions contained in this Lease are for convenience only and shall not be considered in the construction or interpretation of any provision hereof.

(iv)   INCORPORATION OF PRIOR AGREEMENTS; AMENDMENTS  This Lease contains all of the agreements of the parties hereto with respect to any matter covered or mentioned in this Lease, and no prior agreement or understanding pertaining to any such matter shall be effective for any purpose.  No provision of this Lease may be amended or added to except by an agreement in writing signed by the parties hereto or their respective successors in interest.

(v)   WAIVER OF SUBROGATION  Landlord and Tenant hereby mutually waive any and all rights of recovery against one another based upon the negligence of either Landlord or Tenant or their agents or employees for real or personal property loss or damage occurring to the Premises or to the Building or any part thereof or any personal property located therein from perils which are able to be insured against in standard fire and extended coverage, vandalism and malicious mischief and sprinkler leakage insurance contracts (commonly referred to as "All Risk"), whether or not such insurance is actually carried.

(vi)   WAIVER  No waiver by Landlord of any provision of this Lease shall be deemed to be a waiver of any other provision hereof or of any subsequent breach by Tenant of the same or any other provision.  Landlord's consent to or approval of any act by Tenant requiring Landlord's consent or approval shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act of Tenant, whether or not similar to the act so consented to or approved.  No act or thing done by Landlord or Landlord's agents during the Term of this Lease shall be deemed an acceptance of a surrender of the Premises, and no agreement to accept such a surrender shall be valid unless in writing and signed by Landlord.  The subsequent acceptance of Rent shall not be deemed a waiver of any preceding breach by Tenant of any term, covenant or condition of the Lease, other than the failure of Tenant to pay the particular Rent so accepted.

(vii)   QUIET ENJOYMENT  Landlord shall warrant and defend Tenant in the quiet enjoyment and possession of the Premises throughout the Term, subject to the terms, conditions and limitations set forth in this Lease.

(viii)   LATE CHARGE  If any monthly installment of Base Rent or Tenant's Proportionate Share of Operating Costs or any payment of Additional Rent is not paid within ten (10) days after such installment or payment is due and payable (the "Late Payment Date"), Tenant shall, upon demand, pay Landlord a late charge of 5% of the amount of such installment or payment.  In addition, if any such past due installment of Base Rent or Tenant's Proportionate Share of Operating Costs or payment of Additional Rent is not paid within the 30 day period following the Late Payment Date or within any subsequent 30 day period, such past due installment or payment shall be subject to an additional late charge in the same amount for each such 30 day period until paid.  Such late charge is to defray the administrative costs and inconvenience and other expenses which Landlord will incur on account of such delinquency.

10172B45
15030017

Medical Office Building Lease
CA-625 11/93
Page 10

and agreeable to Tenant

(ix)    RELOCATION  Landlord shall have the right, upon not less than ninety (90) days prior written notice to Tenant, to relocate Tenant to other space designated by Landlord within the Building or any other building located on the campus of Columbia Valley Regional Medical Center provided that:  (1) Landlord shall pay all reasonable costs of such relocation, including, without limitation, moving costs, installation of telecommunication and computer lines, and printing costs for new stationary, (b) such relocation shall be performed on a weekend so as to minimize any interruption to Tenant's business, (c) the floor area of such relocation space shall be not less than the floor area of the Premises, and (d) the tenant finishes in such relocation space shall be comparable to the tenant finishes in the Premises prior to such relocation.  Upon any such relocation, this Lease shall be deemed to be amended so as to change the location of the Premises to the relocation space and upon request by Landlord, Tenant shall execute and amendment to this Lease acknowledging such relocation.

(x)    BINDING EFFECT  This Lease shall be binding upon, and inure to the benefit of the parties hereto, their heirs, successors, assigns, executors and administrators.  However, nothing in this Article shall be deemed to amend the provisions of Article X on Assignment and Subletting.

(xi)    GOVERNING LAW  This Lease shall be governed by the laws of the state where the Building is located.

(xii)    ADDENDA  Attached to this Lease are the following Addenda, which contain additional provisions that are incorporated into this Lease by reference as if set forth herein:  Addendum A - Floor Plan; Addendum B-Interior Improvements; Addendum C-Interior Improvements Cost Estimate; Addendum D-Rules and Regulations.

ARTICLE XXII.    CONDITION PRECEDENT

Notwithstanding anything contained herein to the contrary, this Lease shall not be effective or legally binding upon the parties hereto until it has been reviewed and approved in writing, in accordance with Landlord's approval guidelines, by Landlord's Regional Representative and Landlord's Facilities Management Representative or its Legal Counsel.

Furthermore, the parties hereby acknowledge that Landlord's obligations under this Lease are conditioned on (a) Landlord obtaining signed leases similar to this Lease from other proposed tenants for not less than 27,500 square feet of usable area; and (b) Landlord securing all necessary regulatory, zoning and other approvals for the construction of the Building and the use thereof for medical purposes. Consequently, in the event Landlord does not receive by May 12, 1997 signed leases similar to this Lease from other tenants acceptable to Landlord for 27,500 or more square feet of usable space in the Building or if Landlord has not obtained such approvals by May 12, 1997, then in any such event Landlord may terminate this Lease by delivering written notice thereof to Tenant, in which event Landlord shall return the security deposit to Tenant and Landlord and Tenant shall have no further obligations or liabilities under this Lease.

Medical Office Building Lease
CA-625  11/93
Page 11

IN WITNESS WHEREOF, the parties have duly executed this Lease the day and year first above written.

WITNESS:

_Emma S. Neal_

_____

[as to Tenant]

TENANT:

J. Raul Rodriguez, M.D. and Juan I
Rodriguez, M.D.

BY: _____
        (Signature)

NAME: _____

TITLE: _____


WITNESS:

_____

_____

[as to Landlord]

LANDLORD:

COLUMBIA VALLEY REGIONAL MEDICAL CENTER

BY: _____

NAME: _Pete Delgado_____

TITLE: _CEO_____


APPROVED:

_____

(Landlord's Regional Representative, Facilities Management Representative
or Legal Counsel)

0172845
5031617

ADDENDUM "A" TO MEDICAL OFFICE BUILDING LEASE

FLOOR PLAN

[ATTACH FLOOR PLAN WITH PERIMETER OF PREMISES OUTLINED THEREON]



10172B45
15030017

ADDENDUM "B" TO MEDICAL OFFICE BUILDING LEASE
INTERIOR IMPROVEMENTS
J. Raul Rodriguez, M.D. and
Juan I. Rodriguez, M.D. ("Tenant") and COLUMBIA VALLEY REGIONAL

Pursuant to the Lease entered into between _____ ("Tenant") and COLUMBIA VALLEY REGIONAL MEDICAL CENTER ("Landlord"), the undersigned Tenant hereby acknowledges and agrees as follows:

1. Notwithstanding anything to the contrary contained in this Lease, the Premises to be leased to Tenant shall include the following interior improvements: air conditioning, drywall partitioning, interior drywall or plaster, painting, insulation, dropped or acoustical ceilings, office lighting, doors, frames, case work, hardware, carpeting or resilient flooring and base, toilet or other plumbing fixtures and facilities, mechanical and electrical distributions and related systems (including light switches and telephone outlets), as well as the following (if none, insert "NONE"): _____

2. Landlord shall provide an Interior Improvement Allowance equal to FORTY-TWO AND NO/100 DOLLARS ($42.00) per square foot of useable area of the Premises. The total amount of the Interior Improvement Allowance shall be established at such time as the final usable square footage of the Premises is determined pursuant to Section 1 of the Lease. The amount of the Interior Improvement Allowance shall be applied toward costs incurred by Landlord in designing, obtaining, constructing and installing the interior improvements. All costs of designing, obtaining, constructing and installing the interior improvements in excess of the amount of the Interior Improvement Allowance ("Excess Costs") shall be borne solely by Tenant. Such Excess Costs, if any, will be estimated by Landlord and paid by Tenant to Landlord prior to Tenant's occupancy of the Premises. The interior improvement cost estimate (which shall include an Excess Cost estimate) shall be attached to this Lease as Addendum "C".

3. The interior improvements will be designed and installed by Landlord, Landlord's architects and Landlord's contractors. Tenant shall work with Landlord, Landlord's architects and Landlord's contractors to develop space plans, working drawings and detailed plans and specifications for the interior improvements. Tenant acknowledges and agrees that all architects and contractors that are awarded interior improvement contracts or other contracts pertaining to the Lease are to be chosen and managed by Landlord or Landlord's agent.

WITNESSES:

_Emma L. Leal_
Emma L. Leal
(Name - Please print)

_____
(Name - Please print)

TENANT:
J. Raul Rodriguez, M.D. and
Juan I. Rodriguez, M.D.
(Name)

By: _____

Name: _____

Title: _____

LANDLORD:

COLUMBIA VALLEY REGIONAL MEDICAL CENTER

_____
(Name - Please print)

_____
(Name - Please print)

By: Pete Delgado

Name: CEO

Title: _____

jsm\contract\westside_1 [A]
cmd032295.5

10172845
15030017

ADDENDUM "C" TO MEDICAL OFFICE BUILDING LEASE
INTERIOR IMPROVEMENT COST ESTIMATE

J.Raul Rodriguez, M.D. and

Pursuant to the Lease entered into between  Juan I. Rodriguez ("Tenant") and COLUMBIA VALLEY REGIONAL MEDICAL
                                            M.D.
CENTER ("Landlord"), the undersigned Tenant hereby acknowledges and agrees as follows:

   1.   That Tenant has reviewed the construction plans and specifications provided by _____, dated _____
for construction of the interior improvements for the Premises.

   2.   Tenant hereby authorizes the contractor to proceed with the interior improvements of the Premises based upon same as same may
be modified or amended in accordance with Paragraph XI of the Lease.

   3.   Tenant acknowledges and agrees that the estimated cost of designing, obtaining, constructing and installing the interior
improvements is _____ DOLLARS ($_____), and that such estimated cost exceeds the
Interior Improvement Allowance provided by Landlord in accordance with Addendum "A" of the Lease by _____
DOLLARS ($_____). Said Excess Cost is to be paid by Tenant and Tenant hereby acknowledges Tenant's obligation to pay the amount
of such Excess Cost in accordance with Addendum "B" of this Lease.

   IN WITNESS WHEREOF, the parties have hereunto set their hands and seals this _____ day of _____, 1995.

WITNESSES:                                  TENANT:

_Emma I ___ ___                             _____
_Emma L    ___                                                  (Name)
Name - Please print)

_____             _____
mme - Please print)                         By: _____
                                            Name: _____
                                            Title: _____

                                            LANDLORD:

                                            COLUMBIA VALLEY REGIONAL MEDICAL CENTER

_____
me - Please print)

_____             By: _____
ne - Please print)                          Name: _____
                                            Title: _____

contract\westside.1 [BE
032295.4

72B45
30017

## ADDENDUM "D" TO MEDICAL OFFICE BUILDING LEASE
### RULES AND REGULATIONS

**1.   CONDUCT**

Tenant shall not conduct its practice or business, or advertise such business, profession or activities of Tenant conducted in the Premises in any manner which violates local, state or federal laws or regulations.

**2.   HALLWAYS AND STAIRWAYS**

Tenant shall not obstruct or use for storage, or for any purpose other than ingress and egress, the sidewalks, entrances, passages, courts, corridors, vestibules, halls, elevators and stairways of the Building.

**3.   NUISANCES**

Tenant shall not make or permit any noise, odor or act that is objectionable to other occupants of the Building to emanate from the Premises, and shall not create or maintain a nuisance thereon.

**4.   MUSICAL INSTRUMENTS, ETC.**

Tenant shall not install or operate any phonograph, musical instrument, radio receiver or similar device in the Building in such manner as to disturb or annoy other tenants of the Building or the neighborhood. Tenant shall not install any antennae, aerial wires or other equipment outside the Building without the prior written approval of Landlord.

**5.   LOCKS**

With the exception of Tenant's pharmaceuticals locker or storage facility, no additional locks or bolts of any kind shall be placed upon any of the doors or windows by Tenant, nor shall any changes be made in existing locks or the mechanism thereof. Tenant must upon the termination of its tenancy restore to Landlord all keys to the Premises and toilet rooms either furnished to or otherwise procured by Tenant; and in the event of loss of any keys so furnished, Tenant shall pay to Lessor the cost thereof.

**6.   OBSTRUCTING LIGHT, DAMAGE**

The sash doors, sashes window glass doors, lights and skylights that reflect or admit light into the halls or other places of the Building shall not be covered or obstructed. The toilets and urinals shall not be used for any purpose other than those for which they were intended and constructed, and no rubbish, newspapers or other substances of any kind shall be thrown into them. Waste and excessive or unusual use of water shall not be allowed. Tenant shall not mark, drive nails, screw or drill into, paint, nor in any way deface the walls, ceilings, partitions, floors, wood, stone or iron work. The expense of any breakage, stoppage or damage resulting from a violation of this rule by Tenant shall be borne by Tenant. Tenant shall be permitted to hang pictures on office walls, but it must be done in a workmanlike manner and in such a way as not to damage or deface such walls.

**8.   WIRING**

Electrical wiring of every kind shall be introduced and connected only as directed by Landlord, and no boring nor cutting of wires will be allowed except with the consent of Landlord. The location of the telephone, call boxes, etc., shall be subject to the approval of Landlord.

**9.   EQUIPMENT, MOVING, FURNITURE, ETC.**

Landlord shall approve the weight, size and position of all fixtures, equipment and other property brought into the Building, and the times of moving which must be done under the supervision of Landlord. Landlord will not be responsible for any loss of or damage to any such equipment or property from any cause, and all damage done in the Building by moving or maintaining any such property shall be repaired at the expense of Tenant. All equipment shall be installed as required by law, and in accordance with and subject to written approval received on written application of Tenant.

**10.   REQUIREMENTS OF TENANT**

The requirements of Tenant will be attended to only upon application at the office of Landlord. Employees shall not perform any work nor do anything outside their regular duties unless under special instructions from Landlord. No employee shall admit any person, Tenant or otherwise, to any other office without instruction from the office of Landlord. All janitorial services personnel, guards or any outside contractors employed by Tenant shall be subject to the regulations and control of Landlord, but shall not act as an agent or servant of Landlord.

**11.   MEDICAL AND HAZARDOUS WASTES**

Tenant shall comply with all policies established from time to time by Landlord regarding the storage and disposal of hazardous substances, wastes and materials, and medical, special or infectious wastes.

**12.   ACCESS TO BUILDING**

Any person entering or leaving the Building may be questioned by Building security regarding his/her business in the Building and may be required to sign in and out. Anyone who fails to provide a satisfactory reason for being in the Building may be excluded.

**3.  VEHICLES, ANIMALS, REFUSE**

Tenant shall not allow anything to be placed on the outside window ledges of the Premises or to be thrown out of the windows of the Building. No bicycle or other vehicle, and no animal shall be brought into the offices, halls, corridors, elevators or any other parts of the Building by Tenant or the agents, employees or invitees of Tenant, and Tenant shall not place or permit to be placed any obstruction or refuse in any public part of the Building.

**4.  EQUIPMENT DEFECTS**

Tenant shall give Landlord prompt notice of any accidents to or defects in the water pipes, gas pipes, electric lights and fixtures, heating apparatus, or any other service equipment.

**5.  PARKING**

Unless otherwise specified by Landlord, Tenant and its employees may park automobiles only in spaces designated by Landlord for such purpose and shall in no event park in spaces reserved for public parking. Tenant agrees that Landlord assumes no responsibility of any kind whatsoever in reference to such automobile parking area or the use thereof by Tenant or its agents or employees.

**6.  CONSERVATION AND SECURITY**

Tenant will see that all windows and doors are securely locked, and that all faucets and electric light switches are turned off before leaving the Building.

**7.  SIGNAGE**

Tenant shall not place any sign upon the Premises or the Building without Landlord's prior written consent.

EXHIBIT "E"

TO

TEXAS MEDICAL OFFICE BUILDING LEASE AGREEMENT

BETWEEN

J. RAUL RODRIGUEZ, MD AND JUAN I. RODRIGUEZ, MD

AS LANDLORD

AND

COLUMBIA REGIONAL MEDICAL CENTER

AS TENANT

PREFERENTIAL RIGHT

This Exhibit "E" (the "Preferential Right Exhibit") describes and specifies the Preferential Right (as herein defined hereby granted by Landlord to Tenant with respect to the Preferential Space (as herein defined).

1. Defined Terms.    For purpose of this Preferential Right Exhibit, all terms defined in this Lease or in other exhibits to this Lease are utilized herein without further definition. Terms specifically applicable to this Preferential Right Exhibit have the meanings specified in this Preferential Right Exhibit.

2. Grants of Preferential Right.    Subject to the conditions set forth in this Preferential Right Exhibit, and provided Tenant is not in default under this Lease at the time Tenant exercises the Preferential Right, Landlord hereby grants to Tenant a preferential right ("Preferential Right") to lease a portion of the rentable space on the third floor of the Building, consisting of) approximately 4,660 rentable square feet and shown on the drawing attached hereto as Exhibit E-1 (the "Preferential Space").

August 1,

3. Exercise of Preferential Right.    In the event all or any portion of the Preferential Space becomes available for direct lease from Landlord prior to ~~July 15, 1997~~ and Landlord receives a "Bona Fide Offer" (as hereinafter defined) (the "Third Party Offer") to lease such Preferential Space from an independent third party ("Third Party") which Landlord desires to accept, Landlord shall notify Tenant of the availability for lease of such Preferential Space and

shall include in such notice a copy of the form of lease agreement agreed to by Landlord and the Third Party (the "Third Party Lease"). Tenant shall have ten (10) days after the receipt of Landlord's notice of the availability of any Preferential Space for lease in which to notify Landlord in writing of the exercise by Tenant of Tenant's Preferential Right with respect to the Preferential Space described in Landlord's notice to Tenant. In the event that Tenant fails to notify Landlord within such ten-day period that Tenant elects to exercise Tenant's Preferential Right with respect to such Preferential Space, Tenant shall be deemed to have waived Tenant's Preferential Right with respect to such Preferential Space only; and Landlord shall have the right to enter into a lease with any party, including Third Party, with respect to that Preferential space on substantially the same term and conditions as are specified in the Third Party Lease. In the event that Landlord does not enter into a lease with respect to the subject Preferential Space, the Preferential Right shall again become applicable to such Preferential Space upon the same terms and conditions specified in this Preferential Right Exhibit. In the event that Tenant elects to exercise Tenant's Preferential Right with respect to the subject Preferential space and does in fact exercise such Preferential Right in the same manner and within the time period specified herein, Landlord and Tenant shall enter into the Third Party Lease. A "Bona Fide Offer" shall mean an offer to lease space pursuant to a written lease for a term of at least one year, at a rental rates consistent with the then-current market rate for comparable space and on such other terms as are commercially reasonable.

    4.   Delivery of Preferential Space.    Any Preferential Space as to which Tenant has timely exercised Tenant's Preferential Right shall be delivered to Tenant as provided in the Third Party Lease. Rent shall commence to accrue with respect to any Preferential Space as provided in the Third Party Lease.

    5.   Termination.    Tenant acknowledges that this Preferential Right shall terminate and be of no further effect as of ~~July 15, 1997~~. August 1, 1997 [handwritten initials]

[handwritten text]

Exhibit E-1
"Preferential Space"



## ASSIGNMENT AND ASSUMPTION AGREEMENT

### (Space Leases)

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Assignment**") is made and entered into as of July 1, 2000 (the "**Effective Date**"), by and between each of the corporations, limited partnerships and limited liability companies listed as a "Current MOB Owner" on Exhibit A attached hereto (each an "**Assignor**"), and each of the limited liability companies and limited partnerships listed as a "MOB Owner" on Exhibit A attached hereto (each an "**Assignee**"), under the following circumstances:

A.    Pursuant to the terms of that certain Contribution and Sale Agreement dated as of July 1, 2000 (the "**Contribution Agreement**"), by and among Healthtrust MOB, LLC, a Delaware limited liability company, JV Investor, LLC, a Delaware limited liability company, Healthtrust, Inc. – The Hospital Company, a Delaware corporation ("**HCA Sub**"), Medcap Properties, LLC, a Delaware limited liability company (the "**LLC**"), and HCA – The Healthcare Company, a Delaware corporation ("**HCA**"), the HCA Sub shall, upon the satisfaction of certain conditions precedent, transfer and convey to the LLC and the LLC shall acquire from the HCA Sub all of the HCA Sub's ownership interest in certain wholly owned limited liability companies and limited partnerships (the "**MOB Owners**") which own certain real property interests (all such interests are hereinafter referred to collectively as the "**Real Property**") in certain medical office buildings (all such medical office buildings are referred to collectively as the "MOBs;" each medical office building is referred to individually as a "**MOB**").

B.    As of the time of execution of the Contribution Agreement, the MOBs were not owned by or leased to any of the MOB Owners, but instead were owned by or leased to other affiliates and subsidiaries of HCA Sub (the "**Current MOB Owners**").

C.    Pursuant to the Contribution Agreement, the HCA Sub agreed to cause each Current MOB Owner to convey or lease its respective MOB(s) to the MOB Owner as determined in accordance with the terms of the Contribution Agreement.

D.    The Assignors are Current MOB Owners and the Assignees are MOB Owners, and on the date hereof and in accordance with the terms of the Contribution Agreement, each Assignor listed as the Current MOB Owner of a MOB on Exhibit A attached hereto (each a "**Transferred MOB**") is conveying fee simple or leasehold title, as the case may be, to such MOB to the Assignee listed as the MOB Owner of such MOB on Exhibit A attached hereto.

E.    In connection with such conveyances and in accordance with the terms of the Contribution Agreement, the Assignors and Assignees desire to enter into this

Assignment in order that each Assignor may assign, transfer and convey to the Assignee acquiring such Assignor's MOB, all of such Assignor's right, title and interest in and to the leases pursuant to which tenants listed on the Rent Rolls attached hereto as **Exhibit B** occupy any portion of such Assignor's Transferred MOB ( the "**Tenant Leases**").

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignors and the Assignees agree as follows:

1.      Each Assignor listed as a Current MOB Owner of a MOB on **Exhibit A** attached hereto hereby assigns, transfers and conveys to the Assignee listed on **Exhibit A** attached hereto as the MOB Owner of such MOB, all of such Assignor's rights, title, claim and interest as lessor or landlord in and to the Tenant Leases of space in such MOB.

2.      Each Assignee hereby accepts this assignment and assumes all of the duties, obligations and liabilities of the Assignor arising or occurring on and after the date hereof under the Tenant Leases assigned to such Assignee.

3.      Each Assignee shall defend and  indemnify the Assignor which has assigned Tenant Leases to such Assignee, and such Assignor's partners, members, officers, employees, counsel, agents and assigns (the "**Assignor Indemnified Parties**"), and hold the Assignor Indemnified Parties wholly harmless from and against any and all "Claims" (as hereinafter defined) asserted against or incurred by any of the Assignor Indemnified Parties as a result of any acts or omissions on or after the Effective Date in connection with the Tenant Leases assigned by such Assignor to such Assignee.  Each Assignor shall defend and  indemnify the Assignee to whom such Assignor has assigned Tenant Leases, and such Assignee's partners, members, officers, employees, counsel, agents and assigns (the "**Assignee Indemnified  Parties**"), and hold the Assignee Indemnified Parties wholly harmless from and against any and all Claims asserted against or incurred by any of the Assignee Indemnified Parties as a result of any acts or omissions before the Effective Date in connection with the Tenant Leases assigned by such Assignor to such Assignee.  As used herein, the term "**Claims**" shall mean all claims, demands, causes of action, losses, damages, liabilities, judgments, costs (including, without limitation, court costs and costs of appeal) and expenses (including, without limitation, reasonable attorney's fees).

4.      This Assignment shall be binding on and inure to the benefit of the parties hereto and their successors and assigns.

5.      This Assignment shall  be construed in accordance with the laws of the State of Tennessee, without regard to the application of choice of law principles.

519199.3

6.    This Assignment may be executed in any number of counterparts, each of which shall be an original, and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Assignors and the Assignees have executed this Assignment as of the day and year first above written.

ASSIGNORS:

THE CORPORATIONS LISTED ON EXHIBIT A ATTACHED HERETO AS CURRENT MOB OWNERS

By: _Howard K. Patterson_ _____

Howard K. Patterson
Vice President

THE LIMITED PARTNERSHIPS AND LIMITED LIABILITY COMPANIES LISTED ON EXHIBIT A ATTACHED HERETO AS CURRENT MOB OWNERS

By:  Healthtrust, Inc.-The Hospital Company, the member of Notami Hospitals, LLC, the member of Samaritan, LLC, the general partner of Good Samaritan Hospital, L.P.

By:  Columbia South Florida Division, Inc., General Partner of JFK Real Properties, Ltd.

By:  Columbia Olympia Management, Inc., co-general partner of Columbia Capital Medical Center Limited Partnership

By: HTI Hospital Holdings, Inc., member of Capital Medical Center Partner, LLC, the co-general partner of Columbia Capital Medical Center Limited Partnership

By: NTGP, Inc., as Co-General Partner of North Texas General, L.P., as General Partner of Columbia North Texas Healthcare System, L.P., the Member of Columbia North Texas Subsidiary GP, LLC, the General Partner of Columbia Medical Center of Arlington Subsidiary, L.P.

By: Healthtrust, Inc.–The Hospital Company, the Member of GalTex, LLC, as Co-General Partner of North Texas General, L.P., as General Partner of Columbia North Texas Healthcare System, LP, the Member of Columbia North Texas Subsidiary GP, LLC, the General Partner of Columbia Medical Center of Arlington Subsidiary, L.P.

By: Palm Beach Healthcare System, Inc., member of Columbia Palm Beach GP, LLC, the general partner of Columbia/JFK Medical Center Limited Partnership

By: Conroe Hospital Corporation, as General Partner of CHCA Conroe, L.P.

By: NTGP, Inc., as Co-General Partner of North Texas General, L.P., the General Partner of Columbia North Texas Healthcare System, LP, the Member of Columbia North Texas Subsidiary GP, LLC, the General Partner of Columbia Plaza Medical Center of Fort Worth Subsidiary, L.P.

By: Healthtrust, Inc.–The Hospital Company, the Member of GalTex, LLC, as Co-General Partner of North Texas General, L.P., the General Partner of Columbia North Texas Healthcare System, LP, the Member of Columbia North Texas Subsidiary GP, LLC, the General Partner of Columbia Plaza Medical Center of Fort Worth Subsidiary, L.P.

By: Sunbelt Regional Medical Center, Inc., the General Partner of CHCA East Houston, L.P.

By: Woman's Hospital of Texas, Incorporated, the General Partner of CHCA Woman's Hospital, L.P.

By: NTGP, Inc., as Co-General Partner of North Texas General, L.P., as General Partner of Columbia North Texas Healthcare System, LP, the Member of Columbia North Texas Subsidiary GP, LLC, the General Partner of Columbia North Hills Hospital Subsidiary, L.P.

By: Healthtrust, Inc.–The Hospital
Company, the Member of GalTex,
LLC, as Co-General Partner of
North Texas General, L.P., as
General Partner of Columbia North
Texas Healthcare System, LP, the
Member of Columbia North Texas
Subsidiary GP, LLC, the General
Partner of Columbia North Hills
Hospital Subsidiary, L.P.

By: NTGP, Inc., as Co-General Partner
of North Texas General, L.P., as
General Partner of Columbia North
Texas Healthcare System, LP, the
Member of Columbia North Texas
Subsidiary GP, LLC, the General
Partner of Columbia Medical Center
of Plano Subsidiary, L.P.

By: Healthtrust, Inc.–The Hospital
Company, the Member of GalTex,
LLC, as Co-General Partner of
North Texas General, L.P., as
General Partner of Columbia North
Texas Healthcare System, LP, the
Member of Columbia North Texas
Subsidiary GP, LLC, the General
Partner of Columbia Medical Center
of Plano Subsidiary, L.P.

By: NTGP, Inc., as Co-General Partner
of North Texas General, L.P., as
General Partner of Columbia North
Texas Healthcare System, LP, the
Member of Columbia North Texas
Subsidiary GP, LLC, the General
Partner of Columbia Medical Center
of Lewisville Subsidiary, L.P.

By: Healthtrust, Inc.–The Hospital Company, the Member of GalTex, LLC, as Co-General Partner of North Texas General, L.P., as General Partner of Columbia North Texas Healthcare System, LP, the Member of Columbia North Texas Subsidiary GP, LLC, the General Partner of Columbia Medical Center of Lewisville Subsidiary, L.P.

By: WHMC, Inc., the General Partner of CHCA West Houston, L.P.

By: Brownsville-Valley Regional Medical Center, Inc., as General Partner of Columbia Valley Healthcare System, L.P.

By: VH Holdings, Inc., the Member of San Jose, LLC, as General Partner of San Jose Healthcare System, L.P.

By: Healthtrust, Inc.-The Hospital Company, the member of Wesley Medical Center, LLC

By: Healthtrust, Inc. – The Hospital Company, the member of GalTex, LLC

By: Healthtrust, Inc.-The Hospital Company, Member of Lakeview Medical Center, LLC

By: Galen-Med, Inc., the member of Lakeland Medical Center, LLC

By: *Howard K. Patterson*

Howard K. Patterson
Vice President of each of the above listed corporations

ASSIGNEES:

THE       LIMITED       LIABILITY
COMPANIES   and   LISTED   ON
EXHIBIT A ATTACHED HERETO AS
MOB OWNERS

By:  Healthtrust, Inc. – The Hospital
     Company, member

By: _Howard K. Patterson_____
         Howard K. Patterson
         Vice President


THE     LIMITED     PARTNERSHIPS
LISTED ON EXHIBIT A ATTACHED
HERETO AS MOB OWNERS

By:  MOB/GP  of  Texas,  LLC,  general
     partner

     By: Healthtrust, Inc. – The Hospital
         Company, member

     By: _Howard K. Patterson_____
             Howard K. Patterson

             Vice President

**Exhibit A**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 78 | 37355A | 100-B Allon Gloor | 100-B Allon Gloor Blvd. | Brownsville | TX | Columbia Valley Healthcare System, L.P. | Medical Office Buildings of Texas, L.P. |
| 79 | 39231A | Lakeview * | 96 East Price Road | Brownsville | TX | Healthtrust, Inc. - The Hospital Company | Medical Office Buildings of Texas, L.P. |
| 82 | 38318B | 500 Med. Ctr. Blvd. | 500 Medical Ctr. Blvd. | Conroe | TX | CHCA Conroe, L.P. | Medical Office Buildings of Texas, L.P. |
| 83 | 38318C | 500 Medical Ctr. Blvd | 500 Medical Ctr. Blvd. | Conroe | TX | CHCA Conroe, L.P. | Medical Office Buildings of Texas, L.P. |
| 84 | 38318D | Southwood Tower | 19221 I-45 South | Conroe | TX | CHCA Conroe, L.P. | Medical Office Buildings of Texas, L.P. |
| 85 | 38318E | 509 Med. Ctr. Blvd | 508 Med. Ctr. Blvd. | Conroe | TX | CHCA Conroe, L.P. | Medical Office Buildings of Texas, L.P. |
| 86 | 38318H | Med. Ctr. Atrium | 504 Medical Ctr. Blvd. | Conroe | TX | CHCA Conroe, L.P. | Medical Office Buildings of Texas, L.P. |
| 87 | 38322A | Bay Area Prof. Plaza | 7121 S. Padre Island Dr. | Corpus Christi | TX | Lessee: Columbia Bay Area Realty, Ltd. | Medical Office Buildings of Texas, L.P. |
| 88 | 06003A | Charles Clark Med. Office | 601 Texas Trail | Corpus Christi | TX | GulTex, LLC | Charles Pavilion Holding, LLC-C662.378 |
| 90 | 39301A | Women's Pavilion | 3240 Fort Worth | Corpus Christi | TX | GulTex, LLC | Charles Pavilion Holding, LLC-C662.378 |
| 91 | 06203A | Calallen Orthopedic Bldg | 13725 FM 624 | Corpus Christi | TX | Riverside Hospital, Inc. | Medical Office Buildings of Texas, L.P. |
| 93 | 34325A | One Forest Medical Plaza | 12200 Park Central Drive | Dallas | TX | Metroplex Surgicenters, Inc. | Medical Office Buildings of Texas, L.P. |
| 95 | 39307B | Murchison Medical Bldg | 1810 Murchison | El Paso | TX | Hospital Development Properties, Inc. | Medical Office Buildings of Texas, L.P. |
| 97 | 34816A | Plaza One / Ft. Worth Clinic | 909 9th Ave. | Ft. Worth | TX | Columbia Plaza Medical Center of Fort Worth Subsidiary, L.P. | Medical Office Buildings of Texas, L.P. |
| 99 | 37367B | Columbia E.H. MOB | 1140 Westcourt | Houston | TX | CHCA East Houston, L.P. | Medical Office Buildings of Texas, L.P. |
| 100 | 37367B | Columbia E.H. Med Ctr | 13111 I-10 East Freeway | Houston | TX | CHCA East Houston, L.P. | Medical Office Buildings of Texas, L.P. |
| 101 | 34327B | W. Houston Doctors Ctr. | 12121 Richmond Ave. | Houston | TX | CHCA West Houston, L.P. | Medical Office Buildings of Texas, L.P. |
| 102 | 34319B | 7550 Fannin | 7550 Fannin | Houston | TX | CHCA Woman's Hospital, L.P. | Medical Office Buildings of Texas, L.P. |
| 103 | 34319C | 7580 Fannin | 7580 Fannin | Houston | TX | CHCA Woman's Hospital, L.P. | Medical Office Buildings of Texas, L.P. |
| 104 | 34319E | 755X Fannin (Garage Annex) | 7550 Fannin | Houston | TX | CHCA Woman's Hospital, L.P. | Medical Office Buildings of Texas, L.P. |
| 106 | 06742A | Las Colinas MOB | 6750 N. Mac Arthur Blvd. | Irving | TX | HCA Health Services of Texas, Inc. | Medical Office Buildings of Texas, L.P. |
| 111 | 34372A | Lewisville Tower | 500 W. Main | Lewisville | TX | Columbia Medical Center of Lewisville Subsidiary, L.P. | Medical Office Buildings of Texas, L.P. |
| 115 | 34320C | Frisco MOB | 7689 Preston Road | McKinney | TX | Drake Development Company IV | Medical Office Buildings of Texas, L.P. |
| 116 | 34325B | Colleyville MOB | 4301 Brown Trail | N. Richland Hills | TX | HCA Realty, Inc. | Medical Office Buildings of Texas, L.P. |

4

519199.3

Sent By: LAW OFFICE OF RICARDO ADOBBATI;    9565446830;    Feb-21-02    9:17AM;    Page 2/3

copy



# RICARDO M. ADOBBATI
## ATTORNEY & COUNSELOR AT LAW
134 E. Price Road ♦ Brownsville, Texas 78521
Tel (956) 544-6881 ♦ Fax (956) 544-6883

Ms. Angela M. Playle
HCA Healthcare Corporation
One Park Plaza
Nashville, Tennessee 37203

Re:    Leasehold by and between Medical Office Building of Texas, L.P. previously
Valley Regional Medical Center ("Landlord") and Raul Rodriguez, M.D. and
Juan Rodriguez, M.D. ("Tenant") located at Valley Regional Medical Office
Building, 100-B Alton Gloor, Suite 110, Brownsville, Texas; Our File No. 01-297

Dear Angela:

I have had an opportunity to consult with my clients with regard to the problems
they continue to have in their offices. As we speak the offices continue to have problems
and the doctors continue with disruptions and concerns in the office. Not only are they
faced with the health concerns we have discussed in detail, they continue to lose income.
The incidents and failed repairs create the need for them to stop seeing patients, yet they
continue with the daily overhead.

I asked that they provide me with the costs incurred to date. We have documented
at least 11 days of office closings due to the multiple leakage problems. The days
continue to accumulate, as the last incident required a cessation of patient visits. I have
not yet received the down time for the last incident.

Based on conservative estimates, my clients have lost approximately $73,567.17
due to the actions of the landlord and their continued failure to provide a habitable office
space. This does not include the costs of replacing equipment and supplies. I have not
included this cost as it was represented to my clients by Sheila Pak that this would be
paid separately. This cost is based on the average patient charge, overhead and delays
incurred over the 11-day period. As you will understand, the overhead and expenses
continue to accumulate during the time when the office is closed for cleaning and repair.
My clients are willing to put this matter behind them if your employer credits the tenants
this amount in rent. They of course also require that the office be repaired satisfactorily.

My clients have further been in contact with an adjuster representing either the
contractor or plumbers originally retained to repair the building. They requested a
detailed listing of all equipment and supplies damaged as a result of the last incident that

Ms. Angela M. Payle
February 15, 2002
Page –2-

took place on January 21st, 2002. This alone amounts to an excess of $14,000.00. Please be advised this does not include lost materials from the prior incidents.

I believe the above offer is more than reasonable considering the situation they have had to endure since the inception of the lease.

Please contact my offices. I look forward to hearing from you in the near future.

Sincerely,

Ricardo M. Adobbati

RMA/yy

## AFFIDAVIT OF SHEILA PACK

STATE OF TEXAS         §
                       §
COUNTY OF CAMERON      §

BEFORE ME, the undersigned authority, personally appeared, Sheila Pack, upon her oath, deposed and stated the following:

1.      My name is Sheila Pack. I am over the age of 18 years, of sound mind and competent in all respects to make this Affidavit. I have personal knowledge of each of the statements and facts set forth herein, and each of those statements is true and correct.

2.      I am employed as a Property Manager for Lincoln Harris, L.L.C. ("Lincoln"). Lincoln is a Delaware limited liability company headquartered in Charlotte, North Carolina. I have been employed with Lincoln or its predecessors in interest since January of 2001.

3.      Attached to my Affidavit as Exhibit "1" is a true and correct copy of the July 2002 rent check from Rodriguez & Rodriguez, P.A., made payable to the order of Valley Regional MOB, and sent to Valley Regional MOB c/o MEDCAP Properties.

FURTHER AFFIANT SAITH NOT.



_____
SHEILA PACK

SUBSCRIBED AND SWORN TO BEFORE ME on the _13th_ day of August, 2002.

SUSAN WILLIAMS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
OCTOBER 7, 2004

_____
Notary Public Signature

(PERSONALIZED SEAL)

AFFIDAVIT OF SHEILA PACK                                    Page 1
D-1047018.1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| J. RAUL RODRIGUEZ and JUAN I.<br>RODRIGUEZ, M.D. | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| VS. | §<br>§<br>§ | CIVIL ACTION NO. B - 0 2 - 1 5 7 . |
| MEDICAL OFFICE BUILDINGS OF<br>TEXAS, L.P., LINCOLN HARRIS, L.L.C.<br>and COLUMBIA VALLEY REGIONAL<br>MEDICAL CENTER | §<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

## DEFENDANT LINCOLN HARRIS, L.L.C.'s CONSENT TO REMOVAL

Pursuant to the Notice of Removal filed with this Court by Defendant Medical Office Buildings of Texas, L.P., Defendant Lincoln Harris, L.L.C. ("Lincoln") joins in and consents to the removal of this cause to the United States District Court for Southern District of Texas. Lincoln's consent is indicated by the signature of its counsel of record below.

A. Eric Dwyer
Texas State Bar No. 0602700

Figari, Davenport & Graves
3400 Bank of America Plaza
901 Main Street
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (Facsimile)

ATTORNEYS FOR LINCOLN
HARRIS L.L.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

J. RAUL RODRIGUEZ and JUAN I.            §
RODRIGUEZ, M.D.                          §
                                         §
        Plaintiffs,                      §
                                         §                **B- 0 2 - 1 5 7**
VS.                                      §          CIVIL ACTION NO. _____
                                         §
MEDICAL OFFICE BUILDINGS OF              §
TEXAS, L.P., LINCOLN HARRIS, L.L.C.      §
and COLUMBIA VALLEY REGIONAL             §
MEDICAL CENTER                           §
                                         §
        Defendants.                      §

## DEFENDANT COLUMBIA VALLEY REGIONAL
## MEDICAL CENTER'S CONSENT TO REMOVAL

Pursuant to the Notice of Removal filed with this Court by Defendant Medical

Office Buildings of Texas, L.P., Defendant Columbia Valley Healthcare System, L.P.

d/b/a Valley Regional Medical Center (which has been named Columbia Valley Regional

Medical Center) (the "Hospital") joins in and consents to the removal of this cause to the

United States District Court for Southern District of Texas.  The Hospital's consent is

indicated by the signature of its counsel of record below.

                                   Thomas Sullivan, Esq.
                                   Texas State Bar No. 19491800

                                   BRIN & BRIN, P.C.
                                   1325 Palm Boulevard, Suite A
                                   Brownsville, Texas 78520

                                   ATTORNEYS FOR COLUMBIA
                                   VALLEY HEALTHCARE
                                   SYSTEM L.P. d/b/a VALLEY
                                   REGIONAL MEDICAL CENTER

NO. 2002-07-2703 E

| | | |
|---|---|---|
| J. RAUL RODRIGUEZ, M.D. | § | IN THE DISTRICT COURT OF |
| And JUAN J. RODRIGUEZ, M.D. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| LINCOLN HARRIS, L.L.C. | § | |
| | § | |
| Defendant. | § | 357TH JUDICIAL DISTRICT |

## INDEX TO PLEADINGS

1.  7/10/02  Plaintiffs' Original Petition

2.  7/10/02  Plaintiffs' Request for Disclosure to Defendants (Medical Office Buildings of Texas, L.P.)

3.  7/10/02  Plaintiffs' Request for Disclosure to Defendants (Lincoln Harris, L.L.C.)

4.  7/10/02  Plaintiffs' Request for Disclosure to Defendants (Columbia Valley Regional Medical Center)

5.  7/17/02  Certificate of Service (Citation - Medical Office Buildings of Texas, L.P.)

6.  7/19/02  Certificate of Service (Citation - Lincoln Harris, L.L.C.)

7.  7/19/02  Certificate of Service (Citation – Columbia Valley Regional Medical Center)

8.  8/5/02  Defendant Medical Office Buildings of Texas. L.P.'s Original Answer

9.  8/5/02  Defendant's Original Answer (Columbia Valley Regional Medical Center)

10.  8/5/02  Defendant's Original Answer (Lincoln Harris, L.L.C.)

RUN DATE 08/07/02
RUN TIME 1:38 PM

PAGE: 01

2002-07-002703-E

RAUL RODRIGUEZ, M.D. & JUAN I. RODRIGUEZ, M.D.

VS

MEDICAL OFFICE BUILDINGS OF TEXAS, L.P., ET AL.

* * * *  C L E R K ' S   E N T R I E S  * * * *

00442401
RICARDO M ADOBBATI
134 E PRICE RD.
BROWNSVILLE TEXAS                    78521 0000

02204508
THOMAS SULLIVAN
1325 PALM BLVD., STE. A
BROWNSVILLE, TEXAS    78520 0000

(06)                              07    10    02

DAMAGES                           30.00

RICARDO M ADOBBATI

| | |
|---|---|
| 07/10/02 | ORIGINAL PETITION FILED |
| 07/10/02 | CITATION (CM): MEDICAL OFFICE |
| | BUILDINGS OF TEXAS, L.P.    FILED: 07/17/02 |
| | SERVED: 07/15/02 |
| 07/10/02 | CITATION (CM): LINCOLN HARRIS L.L.C. |
| | SERVED: 07/15/02    FILED: 07/19/02 |
| 07/10/02 | CITATION (CM): COLUMBIA VALLEY |
| | REGIONAL MEDICAL CENTER |
| | SERVED: 07/15/02    FILED: 07/19/02 |
| 07/10/02 | JURY FEE: Pd. by RICARDO M ADOBBATI |
| 07/10/02 | PLAINTIFF'S REQUEST FOR DISCLOSURE TO |
| | DEFENDANT |
| 07/10/02 | PLAINTIFF'S REQUEST FOR DISCLOSURE TO |
| | DEFENDANTS |
| 07/10/02 | PLAINTIFF'S REQUEST FOR DISCLOSURE TO |
| | DEFENDANTS |
| 08/05/02 | ORIGINAL ANSWER: COLUMBIA VALLEY |
| | REGIONAL MEDICAL CENTER |
| 08/05/02 | ORIGINAL ANSWER: MEDICAL OFFICE |
| | BUILDINGS OF TEXAS, L.P. |
| 08/06/02 | ORIGINAL ANSWER: LINCOLN HARRIS L.L.C. |

CAUSE NO. 2002-07-2703 E

FILED 9:00 O'CLOCK __ M
AURORA DE LA GARZA DIST. CLERK

JUL 1 0 2002

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| J. RAUL RODRIGUEZ, M.D. | § | IN THE DISTRICT COURT OF |
| and JUAN I. RODRIGUEZ, M.D. | § | |
| | § | |
| VS. | § | |
| | § | CAMERON COUNTY, TEXAS |
| MEDICAL OFFICE BUILDINGS OF | § | |
| TEXAS, L.P., LINCLON HARRIS, L.L.C. | § | |
| and COLUMBIA VALLEY REGIONAL | § | 357th JUDICIAL DISTRICT |
| MEDICAL CENTER. | § | |

---

## PLAINTIFFS ORIGINAL PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **J. RAUL RODRIGUEZ, M.D.** and **JUAN I. RODRIGUEZ, M.D.**, Plaintiffs in the above entitled and numbered cause, and files this their Original Petition, complaining of **MEDICAL OFFICE BUILDINGS OF TEXAS, L.P., LINCOLN HARRIS, L.L.C.** and **COLUMBIA VALLEY REGIONAL MEDICAL CENTER** hereinafter referred to as Defendants, and for cause of action would respectfully show unto the court as follows:

### I.

### DISCOVERY CONTROL PLAN

This cause of action and discovery is to be conducted under Level II.

### II.

### PARTIES

1.    Plaintiff, **J. RAUL RODRIGUEZ, M.D.** is an individual residing in Brownsville, Cameron County, Texas.

2.     Plaintiff, **JUAN I. RODRIGUEZ, M.D.** is an individual residing in Brownsville, Cameron County, Texas.

3.     Defendant **MEDICAL OFFICE BUILDINGS OF TEXAS, L.P.** is a limited partnership doing business in the State of Texas and may be served with process by serving their agent for service:     **CORPORATION SERVICE COMPANY, 800 BRAZOS, AUSTIN, TEXAS 78701.** Issuance of citation is being requested at this time.

4.     Defendant **LINCOLN HARRIS L.L.C.** is a Limited Liability Company doing business in the State of Texas and may be served with process by serving their agent for service:   **C. T. CORPORATION SYSTEMS, 350 N. ST. PAUL STREET, DALLAS, TEXAS 75201.** Issuance of citation is being requested at this time.

5.     Defendant **COLUMBIA VALLEY REGIONAL MEDICAL CENTER** is a corporation doing business in the State of Texas and may be served with process by serving their agent for service:   **C. T. CORPORATION SYSTEMS, 350 N. ST. PAUL STREET, DALLAS, TEXAS 75201.** Issuance of citation is being requested at this time.

## III.

## VENUE

Venue is proper in Cameron County pursuant to Texas Civil Practice and Remedies Code §15.001 et. seq. in that all or part of plaintiffs' cause of action herein occurred in Cameron County, Texas. More specifically, defendants conduct business in Cameron County, Texas. Further, all representations made with regard to the agreement between the parties took place in Brownsville, Cameron County, Texas. Further, plaintiffs and defendants reside and/or maintain businesses in Cameron County, Texas. Defendants solicited business from Plaintiffs in Cameron County, Texas and the agreement was entered into in Brownsville, Cameron County, Texas.

## IV.

## FACTUAL ALLEGATIONS

On or about May of 1997, Columbia Valley Regional Medical Center approached plaintiffs in an effort to gain tenancy in a proposed medical office building to be constructed next to the current location for Valley Regional Medical Center in Brownsville, Texas. Specifically, defendant solicited the accelerated signing of a lease by plaintiffs in order for defendant to obtain a loan to finance the construction of the office building where plaintiffs would then reside. Defendant represented the rental rate and future increases described in the written lease agreement were only for purposes of obtaining the loans. The true rate to be paid by plaintiffs would not increase over time. A subsequent agreement would be signed reflecting the true intent of the parties once defendant obtained the necessary financing. Relying on the oral representations of defendants as to the need and urgency for the signed leased from future tenants, plaintiffs entered into said agreement whereby they would lease premises beginning on or about August, 1998 until the 31st of July, 2003. Some time after the lease signing, unbeknownst to Plaintiffs, management and alleged control of the building and its leaseholds was transferred to Medical Office Buildings of Texas along with certain Property Management companies. Said companies failed to recognize the representations made by defendant Columbia Valley Regional Medical Center and insisted the terms of the written agreement be followed.

Throughout the lease term, landlord and/or the property management company was notified of water entering the leased premises either through windows or defective plumbing. On several occasions landlord and/or the property management company was notified of leaking sewage from plumbing lines located within the building. The leakage caused damage to the offices of the tenant. These areas were never properly repaired leading to subsequent occasions when similar damage

took place. On several occasions, the leakage was determined to be feces, urine and other such matter as the plumbing problem was leaked from the sewage system connected to offices located above Plaintiff's leased premises. The same problem persisted and required that the matter be addressed on several occasions. On each of those occasions Plaintiffs suffered property damage and were required to cease seeing patients due to the state of the office and health concerns for the patients.

Due to the failure of the landlord to properly repair the problems, tenants had damage to the property within the offices, as well as delays and losses due to the added expense in having to close the offices and pay employees to clean and maintain the office in a manner which would be safe to both patients and employees. Such damages were a minimum of $87,567.17 comprising of medical supplies, equipment and overhead expenses.

The actions by defendants in repairing, cleaning and disinfecting the premises has been minimal from the outset. Defendants have been negligent and grossly negligent in failing to take the appropriate measures to repair the windows and plumbing at the time of first notification. Defendants intentionally took measures to mask the problems rather to provide a proper remedy pursuant to the agreement and common law. Additionally, such actions by the Defendants in failing to properly repair the areas from the outset as well as simply taking minimal measures to assure the repairs were completed and that all health risks were eliminated has led to a continuous concern by the tenants as to the ramifications of such actions with regard to the employees, tenants and patients.

At all times material hereto, Defendants acted in concert and/or took as actions as agents or representatives of each other. At all times, defendants were aware of the actions and representations made by the other defendants and ratified such activities and as such are responsible for said actions.

## V.

## CAUSES OF ACTIONS

Defendants' actions as related above constitute actions upon which the plaintiffs may recover damages.  Damages may be recovered under the following doctrines:

1.    Breach of Contract;

2.    Fraud;

3.     Negligence;

4.     Joint Enterprise;

5.     Apparent Agency;

6.     Respondeat Superior;

7.     Borrowed Servant;

8.     Ratification;

9.     Each and every defendant can and will be held liable jointly and severally for all causes of action brought herein as their actions were in concert or with the approval of the other defendants.

## VI.

## GROSS NEGLIGENCE

Defendants' actions in the mishandling of their duties and responsibilities pursuant to the agreement between those parties herein have amounted to the level of gross negligence as they have carelessly and wantonly disregarded the rights of the tenant in properly maintaining the premises as well as respecting the representations at the time of entering into said agreement.  Such actions have led to the breach by defendants of the lease made the basis of this suit.

## VII.

## DAMAGES

Defendants' failed performance, non-performance and gross negligence constitute breach of the agreement made the basis of this suit.   As a result of defendants' breach, plaintiffs have incurred the following damages:

1.   Expenses and damages incurred as a result of the replacement and/or repurchase of products and supplies damaged as a result of the actions by defendants as described above;

2.   Damages as a result of loss overhead expenses as well as any other expenses related to the business and as a result of delays and closings of the office due to the inappropriate repairs and negligence/grossly negligent actions of defendants as described above;

3.   Prejudgment interest on the sums due;

4.   Post Judgment interest on those sums due;

5.   Costs of suit;

6.   Court Costs

## VIII.

## ATTORNEYS' FEES

Additionally and as a result of defendants' breach, plaintiffs found it necessary to retain counsel by seeking recovery of reasonable attorney's fees as allowed by Texas Civil Practice and Remedies Code §38.001.

## IX.

## REQUEST FOR TEMPORARY AND PERMANENT INJUNCTION

Plaintiffs have and continue to pay rent toward the leased premises. Plaintiffs respectfully request the court grant a permanent injunction whereby Plaintiffs be allowed to deposit said sums payable on a monthly basis with the registry of the court or other neutral party until this dispute is resolved as plaintiffs' damages exceed the amount of rent remaining on the lease. The court should grant this injunction as there is a substantial likelihood Plaintiffs will prevail on the

merits, the actions in payment pose a substantial threat of irreparable injury to the plaintiffs; the threatened injury outweighs the harm to defendants and the granting of the injunction will not disserve the public interest.

## X.

### JURY DEMAND

Plaintiffs hereby request a trial by jury.

## XI.

### P R A Y E R

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully pray that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against Defendants for damages in an amount within the jurisdictional limits of the Court; together with pre-judgment interest (from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which the Plaintiffs may be entitled at law or in equity.

RESPECTFULLY SUBMITTED,

BY:_____
RICARDO M. ADOBBATI
SBN: 00790208
FEDERAL ADM NO. 18158
COUNTY I.D. #11922

ATTORNEYS FOR PLAINTIFFS

134 E. Price Road
Brownsville, Texas 78521
(956) 544-6882
(956) 544-6883 (Fax)

Citation for Personal Service  - BY CERTIFIED MAIL    Lit. Seq. # 5.005.01

*ORIGINAL*

No. 2002-07-002703-E

### T H E   S T A T E   O F   T E X A S

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: COLUMBIA VALLEY REGIONAL MEDICAL CENTER
SERVING ITS REGISTERED AGENT:
C.T. CORPORATION SYSTEMS
350 N. ST. PAUL STREET
DALLAS, TX 75201

the _____DEFENDANT_____, GREETING:

You are commanded to appear by filing a written answer to the

PLAINTIFF'S ORIGINAL PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 357th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas.  Said _____PETITION_____ was filed on __JULY 10, 2002__.  A copy of same accompanies this citation.

The file number of said suit being No. 2002-07-002703-E.

The style of the case is:

J. RAUL RODRIGUEZ, M.D. & JUAN I. RODRIGUEZ, M.D.
VS.
MEDICAL OFFICE BUILDINGS OF TEXAS, L.P., ET AL.

Said petition was filed in said court by _____RICARDO M ADOBBATI_____
(Attorney for _____PLAINTIFF_____), whose address is
134 E PRICE RD. BROWNSVILLE TEXAS  78521

The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Brownsville, Texas, this the 10th day of __JULY__, A.D. 2002.

AURORA DE LA GARZA    DISTRICT CLERK
Cameron County, Texas
974 E. Harrison St.
Brownsville, Texas 78521

By: _____ , Deputy

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

COLUMBIA VALLEY REGIONAL MEDICAL
CENTER SERVING ITS REGISTERED AGENT:
C.T. CORPORATION SYSTEMS
350 N. ST. PAUL STREET
DALLAS, TX 75201

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _signature_    □ Agent
                 □ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

RECEIVED JUL 15 2002

D. Is delivery address different from item 1?    □ Yes
   If YES, enter delivery address below:    □ No

3. Service Type
   XX Certified Mail    □ Express Mail
   □ Registered    □ Return Receipt for Merchandise
   □ Insured Mail    □ C.O.D.

4. Restricted Delivery? (Extra Fee)    □ Yes

2. Article Number
   (Transfer from service label)

7002 0460 0000 6632 4718

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

Postage    $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees    $

Postmark
Here

Sent To
COLUMBIA VALLEY REGIONAL MEDICAL CENTER
Street, Apt. No.;    SERVING ITS REGISTERED AGENT:
or PO Box No.    C.T. CORPORATION SYSTEMS
City, State, ZIP+4    350 N. ST. PAUL STREET, DALLAS, TX 75201

PS Form 3800, January 2001    See Reverse for Instructions

7002 0460 0000 6632 4718

Citation for Personal Service  - BY CERTIFIED MAIL     Lit. Seq. # 5.003.01

No. 2002-07-002703-E

THE   STATE   OF   TEXAS

ORIGINAL

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: MEDICAL OFFICE BUILDINGS OF TEXAS, L.P.
    SERVING ITS AGENT:
    CORPORATION SERVICE COMPANY
    800 BRAZOS
    AUSTIN, TX 78701

the _____ DEFENDANT _____, GREETING:

    You are commanded to appear by filing a written answer to the

PLAINTIFF'S ORIGINAL PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 357th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas.  Said _____ PETITION _____ was filed on __ JULY 10, 2002 __.  A copy of same accompanies this citation.

The file number of said suit being No. 2002-07-002703-E.

The style of the case is:

J. RAUL RODRIGUEZ, M.D. & JUAN I. RODRIGUEZ, M.D.
VS.
MEDICAL OFFICE BUILDINGS OF TEXAS, L.P., ET AL.

Said petition was filed in said court by _____ RICARDO M ADOBBATI _____
(Attorney for _____ PLAINTIFF _____), whose address is
134 E PRICE RD. BROWNSVILLE TEXAS  78521

    The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

    The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

    Issued and given under my hand and seal of said Court at Brownsville, Texas, this the 10th day of __ JULY __, A.D. 2002.

                              AURORA DE LA GARZA   DISTRICT CLERK
                              Cameron County, Texas
                              974 E. Harrison St.
                              Brownsville, Texas 78521

                              By: _____ * Deputy



U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

7002 0460 0000 6632 4732

Postage    $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees    $

Postmark
Here

Sent To
MEDICAL OFFICE BUILDING OF TEXAS
L.P.; SERVING CORPORATION SRVC CO
Street, Apt. No.; or PO Box No.
800 BRAZOS
City, State, ZIP+4 AUSTIN, TX 78701

PS Form 3800, January 2001    See Reverse for Instructions

Citation for Personal Service - BY CERTIFIED MAIL    Lit. Seq. # 5.004.01

No. 2002-07-002703-E

*ORIGINAL*

"THE STATE OF TEXAS

NOTICE TO DEFENDANT: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: LINCOLN HARRIS L.L.C.
    SERVING ITS REGISTERED AGENT:
    C.T. CORPORATION SYSTEMS
    350 N. ST. PAUL STREET
    DALLAS, TX 75201

the _____DEFENDANT_____, GREETING:

You are commanded to appear by filing a written answer to the

PLAINTIFF'S ORIGINAL PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 357th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas. Said _____PETITION_____ was filed on __JULY 10, 2002__. A copy of same accompanies this citation.

The file number of said suit being No. 2002-07-002703-E.

The style of the case is:

J. RAUL RODRIGUEZ, M.D. & JUAN I. RODRIGUEZ, M.D.
VS.
MEDICAL OFFICE BUILDINGS OF TEXAS, L.P., ET AL.

Said petition was filed in said court by _____RICARDO M ADOBBATI_____ (Attorney for _____PLAINTIFF_____), whose address is 134 E PRICE RD. BROWNSVILLE TEXAS 78521

The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Brownsville, Texas, this the 10th day of __JULY__, A.D. 2002.

AURORA DE LA GARZA    DISTRICT CLERK
Cameron County, Texas
974 E. Harrison St.
Brownsville, Texas 78521

By: _____    Deputy



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

LINCOLN HARRIS L.L.C.
SERVING ITS REGISTERED AGENT:
C.T. CORPORATION SYSTEMS
350 N. ST. PAUL STREET
DALLAS, TX 75201

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

RECEIVED JUL 1 5 2002

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7002 0460 0000 6632 4725

PS Form 3811, August 2001   Domestic Return Receipt   102595-01-M-0381

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

Postage   $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees   $

Postmark
Here

Sent To
LINCOLN HARRIS LLC, SERVING C.T. CORP.
Street, Apt. No.; SYSTEMS
or PO Box No.  350 N. ST. PAUL STREET
City, State, ZIP+4

7002 0460 0000 6632 4725

CAUSE NO. _2002·07·2703·E_

| | | |
|---|---|---|
| J. RAUL RODRIGUEZ, M.D. | § | IN THE DISTRICT COURT OF |
| and JUAN I. RODRIGUEZ, M.D. | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| LICOLN HARRIS, L.L.C. | § | |
| Defendants | § | 357th JUDICIAL DISTRICT |
| | § | |

---

### PLAINTIFF'S REQUEST FOR DISCLOSURE TO DEFENDANTS

---

TO:   **LINCOLN HARRIS, L.L.C.**
By serving their registered agent for service:

C.T. Corporation Systems,
650 N. St. Paul Street
Dallas, Texas 75201

FILED ___ O'CLOCK ___ M
AURORA DE LA GARZA DIST. CLERK

JUL 1 0 2002

DISTRICT COURT OF CAMERON COUNTY, TEXAS
DEPUTY

COMES NOW, **J. RAUL RODRIGUEZ, M.D.** and **JUAN I. RODRIGUEZ, M.D.**,

Plaintiffs in the above-styled and numbered cause, and file this their Requests for Disclosure to

Defendants **LINCOLN HARRIS L.L.C.**, as follows:

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, you are requested to disclose,

within (50) days of service of this request, the information or material described in Texas Rules of

Civil Procedure 194.2(a), (b), (c), (d), (e), (f), (g), (h), (i), (j) and (k) as set forth below.  Please

note that pursuant to Rule 194.5 no objections are permitted to these requests.

Furthermore, you are under a duty to supplement your responses in accordance with Rule

193.5 of the Texas Rules of Civil Procedure.

RESPECTFULLY SUBMITTED,

_____

RICARDO M. ADOBBATI
State Bar No.: 00790208
County I.D. #11922

134 E. Price Road
Brownsville, TX 78521
(956) 544-6882
(956) 544-6883 – Fax

---

## CERTIFICATE OF SERVICE

---

    I do certify that a true and correct copy of the above foregoing document has been forwarded via certified mail, return receipt requested, via facsimile, and/or hand delivered on this ___5___ day of June, 2002, as follows

_____

HON. RICARDO M. ADOBBATI

## **REQUEST FOR DISCLOSURE**

**(a)**    the correct names of the parties to the lawsuit;

RESPONSE:


**(b)**    the name, address, and telephone number of any potential parties;

RESPONSE:


**(c)**    the legal theories and, in general, the factual bases of the responding party's claims or
defenses (the responding party need not marshal all evidence that may be offered at trial);

RESPONSE:


**(d)**    the amount and any method of calculating economic damages;

RESPONSE:


**(e)**    the name, address, and telephone number of persons having knowledge of relevant facts,
and a brief statement of each identified person's connection with the case;

RESPONSE:


**(f)**    for any testifying expert:

    (1)    the expert's name, address, and telephone number;

    (2)    the subject matter on which the expert will testify;

    (3)    the general substance of the expert's mental impressions and opinions and a brief
summary of the basis for them, or if the expert is not retained by, employed by, or
otherwise subject to the control of the responding party, documents reflecting such
information;

    (4)    if the expert is retained by, employed by, or otherwise subject to the control of the
responding party:

(A) all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

(B) the expert's current resume and bibliography;

**(g)** any discoverable indemnity and insuring agreements;

**RESPONSE:**

**(h)** any discoverable settlement agreements;

**RESPONSE:**

**(i)** any discoverable witness statements;

**RESPONSE:**

**(j)** in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills;

**RESPONSE:**

**(k)** in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the responding party by virtue of an authorization furnished by the requesting party.

**RESPONSE:**

CAUSE NO. 2002-07-2703 E

| | | |
|---|---|---|
| J. RAUL RODRIGUEZ, M.D. | § | IN THE DISTRICT COURT OF |
| and JUAN I. RODRIGUEZ, M.D. | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| COLUMBIA VALLEY REGIONAL | § | |
| MEDICAL CENTER | § | |
| Defendants | § | 357th JUDICIAL DISTRICT |
| | § | |

---

### PLAINTIFF'S REQUEST FOR DISCLOSURE TO DEFENDANTS

---

TO: **COLUMBIA VALLEY REGIONAL MEDICAL CENTER**
By serving their registered agent for service:



C.T. Corporation Systems,
350 N. St. Paul Street
Dallas, Texas 75201

COMES NOW, **J. RAUL RODRIGUEZ, M.D.** and **JUAN I. RODRIGUEZ, M.D.**, Plaintiffs in the above-styled and numbered cause, and file this their Requests for Disclosure to Defendants **COLUMBIA VALLEY REGIONAL MEDICAL CENTER.**, as follows:

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, you are requested to disclose, within (50) days of service of this request, the information or material described in Texas Rules of Civil Procedure 194.2(a), (b), (c), (d), (e), (f), (g), (h), (i), (j) and (k) as set forth below. Please note that pursuant to Rule 194.5 no objections are permitted to these requests.

Furthermore, you are under a duty to supplement your responses in accordance with Rule 193.5 of the Texas Rules of Civil Procedure.

RESPECTFULLY SUBMITTED,

_____
RICARDO M. ADOBBATI
State Bar No.: 00790208
County I.D. #11922

134 E. Price Road
Brownsville, TX 78521
(956) 544-6882
(956) 544-6883 – Fax

---

## CERTIFICATE OF SERVICE

---

I do certify that a true and correct copy of the above foregoing document has been forwarded via certified mail, return receipt requested, via facsimile, and/or hand delivered on this _____ day of July, 2002, as follows

_____
HON. RICARDO M. ADOBBATI

## **REQUEST FOR DISCLOSURE**

**(a)**　　the correct names of the parties to the lawsuit;

RESPONSE:


**(b)**　　the name, address, and telephone number of any potential parties;

RESPONSE:


**(c)**　　the legal theories and, in general, the factual bases of the responding party's claims or defenses (the responding party need not marshal all evidence that may be offered at trial);

RESPONSE:


**(d)**　　the amount and any method of calculating economic damages;

RESPONSE:


**(e)**　　the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case;

RESPONSE:


**(f)**　　for any testifying expert:

　　　　(1)　　the expert's name, address, and telephone number;

　　　　(2)　　the subject matter on which the expert will testify;

　　　　(3)　　the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;

　　　　(4)　　if the expert is retained by, employed by, or otherwise subject to the control of the responding party:

(A)   all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

(B)   the expert's current resume and bibliography;

**(g)**   any discoverable indemnity and insuring agreements;

RESPONSE:

**(h)**   any discoverable settlement agreements;

RESPONSE:

**(i)**   any discoverable witness statements;

RESPONSE:

**(j)**   in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills;

RESPONSE:

**(k)**   in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the responding party by virtue of an authorization furnished by the requesting party.

RESPONSE:

CAUSE NO. 2002-07-2703 E

| | | |
|---|---|---|
| J. RAUL RODRIGUEZ, M.D. | § | IN THE DISTRICT COURT OF |
| and JUAN I. RODRIGUEZ, M.D. | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| MEDICAL OFFICE BUILDINGS OF | § | |
| TEXAS, L.P. | § | |
| Defendants | § | 357th JUDICIAL DISTRICT |

## PLAINTIFF'S REQUEST FOR DISCLOSURE TO DEFENDANTS

TO:    **MEDICAL OFFICE BUILDINGS OF TEXAS, L.P.**
By serving their registered agent for service:

Corporation Service Company
800 Brazos
Austin, Texas 78701

*FILED [stamp] O'CLOCK ___ M*
*AURORA DE LA GARZA DIST. CLERK*
*JUL 10 2002*
*DISTRICT COURT OF CAMERON COUNTY, TEXAS*
*DEPUTY*

COMES NOW, **J. RAUL RODRIGUEZ, M.D.** and **JUAN I. RODRIGUEZ, M.D.**, Plaintiffs in the above-styled and numbered cause, and file this their Requests for Disclosure to Defendants **MEDICAL OFFICE BUILDINGS OF TEXAS, L.P.**, as follows:

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, you are requested to disclose, within (50) days of service of this request, the information or material described in Texas Rules of Civil Procedure 194.2(a), (b), (c), (d), (e), (f), (g), (h), (i), (j) and (k) as set forth below. Please note that pursuant to Rule 194.5 no objections are permitted to these requests.

Furthermore, you are under a duty to supplement your responses in accordance with Rule 193.5 of the Texas Rules of Civil Procedure.

RESPECTFULLY SUBMITTED,

_____

RICARDO M. ADOBBATI
State Bar No.: 00790208
County I.D. #11922

134 E. Price Road
Brownsville, TX 78521
(956) 544-6882
(956) 544-6883 – Fax

---

## CERTIFICATE OF SERVICE

---

I do certify that a true and correct copy of the above foregoing document has been forwarded via certified mail, return receipt requested, via facsimile, and/or hand delivered on this _____ day of July, 2002, as follows

_____

HON. RICARDO M. ADOBBATI

## REQUEST FOR DISCLOSURE

**(a)**  the correct names of the parties to the lawsuit;

RESPONSE:


**(b)**  the name, address, and telephone number of any potential parties;

RESPONSE:


**(c)**  the legal theories and, in general, the factual bases of the responding party's claims or defenses (the responding party need not marshal all evidence that may be offered at trial);

RESPONSE:


**(d)**  the amount and any method of calculating economic damages;

RESPONSE:


**(e)**  the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case;

RESPONSE:


**(f)**  for any testifying expert:

    **(1)**  the expert's name, address, and telephone number;

    **(2)**  the subject matter on which the expert will testify;

    **(3)**  the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;

    **(4)**  if the expert is retained by, employed by, or otherwise subject to the control of the responding party:

     (A)    all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

     (B)    the expert's current resume and bibliography;

**(g)**    any discoverable indemnity and insuring agreements;

RESPONSE:

**(h)**    any discoverable settlement agreements;

RESPONSE:

**(i)**    any discoverable witness statements;

RESPONSE:

**(j)**    in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills;

RESPONSE:

**(k)**    in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the responding party by virtue of an authorization furnished by the requesting party.

RESPONSE:

FILED _8:30_ O'CLOCK _A_ M
AURORA DE LA GARZA DIST. CLERK

AUG 0 5 2002

DISTRICT COURT OF CAMERON COUNTY, TEXAS

No. 2002-07-2703-E

| | | |
|---|---|---|
| J. RAUL RODRIGUEZ and JUAN I. RODRIGUEZ, M.D. | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| MEDICAL OFFICE BUILDINGS OF | § | |
| TEXAS, L.P., LINCOLN HARRIS, L.L.C. | § | |
| and COLUMBIA VALLEY REGIONAL | § | |
| MEDICAL CENTER | § | |
| | § | |
| Defendants. | § | 357TH JUDICIAL DISTRICT |

## DEFENDANT MEDICAL OFFICE BUILDINGS OF TEXAS, L.P.'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Defendant Medical Office Buildings of Texas, L.P. ("Medcap") and for answer to Plaintiffs' Original Petition, would respectfully show the Court the following:

**I.**

### GENERAL DENIAL

Pursuant to Texas Rule of Civil Procedure 92, Medcap generally denies each and every allegation in Plaintiff's Original Petition and demands strict proof thereof.

## II.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Medcap prays that this Court:

1.    Find that Plaintiffs takes nothing by their claims against Medcap;

2.    Tax all costs of this action against Plaintiffs; and

3.    Award Medcap such other and further relief, at law or in equity, to which it

may be justly entitled.

Respectfully submitted,

Michael L. Hood
State Bar No. 09943435
Michael King
State Bar No. 24032634

HAYNES AND BOONE, L.L.P.
3100 Bank of America Plaza
901 Main Street
Dallas, Texas 75202-3714
Telephone:  (214) 651-5000
Telecopier: (214) 651-5490

ATTORNEYS FOR MEDICAL OFFICE
BUILDINGS OF TEXAS, L.P.

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on the following counsel of record in accordance with the Texas Rules of Civil Procedure on this _2_ day of August, 2002:

Ricardo M. Adobbati, Esq.
Attorney & Counselor At Law
134 E. Price Road
Brownsville, Texas 78521

Thomas Sullivan, Esq.
Brin & Brin, P.C.
1325 Palm Boulevard, Suite A
Brownsville, Texas 78520

William D. Powell, Esq.
Suite 1380
8080 North Central Expwy.
Dallas , Texas  75206

_____
Michael L. Hood

**DEFENDANT MEDICAL OFFICE BUILDINGS
OF TEXAS, L.P.'S ORIGINAL ANSWER**
D – 1044893.2

Page 3

CAUSE NO. 2002-07-2703-E

| | | |
|---|---|---|
| J. RAUL RODRIGUEZ, M.D. AND JUAN I. RODRIGUEZ, M.D. | § § § | IN THE 357TH JUDICIAL |
| VS. | § § | |
| MEDICAL OFFICE BUILDINGS OF TEXAS, L.P., LINCOLN HARRIS, L.L.C. AND COLUMBIA VALLEY REGIONAL MEDICAL CENTER | § § § § | DISTRICT COURT OF CAMERON COUNTY, TEXAS |

## DEFENDANT'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Columbia Valley Regional Medical Center, one of the Defendants in the above-styled and numbered cause and makes and files this, its Original Answer in reply to Plaintiff's Petition, and would respectfully show unto the Court the following:

I.

This Defendant denies each and every, all and singular, allegations contained in the Plaintiff's Petitions, and Defendant demands strict proof thereof.

WHEREFORE, PREMISES CONSIDERED, this Defendant prays that upon final hearing hereof, that Plaintiff not recover against this Defendant and that this Defendant go hence with its costs without day and for such other and further relief, at law or in equity, to which this Defendant may justly show itself entitled to receive.

Respectfully submitted,

Brin & Brin, P.C.
1325 Palm Blvd., Suite A
Brownsville, Texas 78520
(956) 544-7110
(956) 544-0607 Telecopier

By: _____
Thomas Sullivan
State Bar No. 19491800
ATTORNEY FOR DEFENDANT
COLUMBIA VALLEY REGIONAL MEDICAL
CENTER

## CERTIFICATE OF SERVICE

This is to certify that the above and foregoing instrument has been forwarded to counsel as indicated below on this the 5th day of August, 2002.

Mr. Ricardo M. Adobatti                    **VIA CMRRR 7002 0460 0000 6426 0582**
134 E. Price Road
Brownsville, Texas 78521

Mr. Michael King                           **VIA REGULAR MAIL**
Haynes & Broone, L.L.P.
901 Main Street, Suite 3100
Dallas, Texas 75202-3789

_____
Thomas Sullivan

NO. 2002-07-2703-E

| | | |
|---|---|---|
| J. RAUL RODRIGUEZ, M.D. | § | IN THE DISTRICT COURT OF |
| and JUAN I. RODRIGUEZ, M.D., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | CAMERON COUNTY, TEXAS |
| | § | |
| MEDICAL OFFICE BUILDINGS OF | § | |
| TEXAS, L.P., LINCOLN HARRIS, L.L.C. | § | |
| and COLUMBIA VALLEY REGIONAL | § | |
| MEDICAL CENTER, | § | |
| | § | |
| Defendants. | § | 357TH JUDICIAL DISTRICT |

## DEFENDANT'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Lincoln Harris, L.L.C. ("Lincoln"), one of the Defendants herein, and in answer to the allegations contained in Plaintiff's Original Petition (the "Petition") on file herein, would respectfully show as follows:

Pursuant to Tex. R. Civ. P. 92, Lincoln denies, all and singular, each and every material allegation contained in the Petition, and states that the same are not true either in whole or in part, and demands strict proof thereof.

WHEREFORE, PREMISES CONSIDERED, Lincoln respectfully prays that Plaintiff take nothing herein and that it go hence without day and recover its costs herein,

**DEFENDANT'S ORIGINAL ANSWER - Page 1**

together with such other and further relief, general and special, at law or in equity, to which it may show itself to be justly entitled.

Respectfully submitted,

FIGARI DAVENPORT & GRAVES

By: _____
    A. Erin Dwyer
    State Bar No. 06302700

3400 Bank of America Plaza
901 Main Street
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (Facsimile)

ATTORNEYS FOR DEFENDANT
LINCOLN HARRIS, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2002, a true and correct copy of the foregoing instrument was sent via facsimile and certified mail, return receipt requested, to Ricardo M. Adobbati, 134 E. Price Road, Brownsville, Texas 78521.

A. Erin Dwyer

**DEFENDANT'S ORIGINAL ANSWER - Page 2**

# EXHIBIT "H"

Ricardo M. Adobbati, Esq.
Attorney & Counselor At Law
134 E. Price Road
Brownsville, Texas 78521
(956) 544-6882

Attorney for Plaintiffs J. Raul Rodriguez and Juan I. Rodriguez, M.D.

Thomas Sullivan, Esq.
Brin & Brin, P.C.
1325 Palm Boulevard, Suite A
Brownsville, Texas 78520
(956) 544-7110

Attorneys for Columbia Valley Regional Medical Center

A. Erin Dwyer
Figari, Davenport & Graves
3400 Bank of America Plaza
901 Main Street
Dallas, Texas 75202
(214) 939-2000

Attorneys for Lincoln Harris, L.L.C.

Michael L. Hood
Michael King
Haynes and Boone, LLP
901 Main Street, Suite 3100
Dallas, Texas 75202
(214) 651-5000

Attorneys for Medical Office Buildings of Texas, L.P.

No. 2002-07-2703-E

| | | |
|---|---|---|
| J. RAUL RODRIGUEZ and JUAN I. RODRIGUEZ, M.D. | § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| VS. | § § | CAMERON COUNTY, TEXAS |
| MEDICAL OFFICE BUILDINGS OF TEXAS, L.P., LINCOLN HARRIS, L.L.C. and COLUMBIA VALLEY REGIONAL MEDICAL CENTER | § § § § § § | |
| Defendants. | § | 357TH JUDICIAL DISTRICT |

## NOTICE OF REMOVAL TO FEDERAL COURT

Please take notice that Defendant Medical Office Buildings of Texas, L.P., pursuant to federal law, has filed with the Clerk of the United States District Court for the Southern District of Texas a Notice of Removal. The Notice of Removal was filed with the consent of Defendants Lincoln Harris, L.L.C. and Columbia Valley Regional Medical Center. Pursuant to 28 U.S.C. §1446(d), this Court is respectfully requested to proceed no further in this action, unless and until the action is remanded by the United States District Court.

A copy of the Notice of Removal filed in the United States District Court is attached hereto as Exhibit "A" and filed with this document. Notice of the removal has also been given to all of the other parties in this action.

This action was removed to the United States District Court under the authority of 28 U.S.C. § 1446 and 15 U.S.C. §§ 77p(b), 78bb(f)(1).

Respectfully submitted,

_____

Michael L. Hood
State Bar No. 09943435
Michael King
State Bar No. 24032634

HAYNES AND BOONE, L.L.P.
3100 Bank of America Plaza
901 Main Street
Dallas, Texas 75202-3714
Telephone: (214) 651-5000
Telecopier: (214) 651-5490

ATTORNEYS FOR MEDICAL OFFICE
BUILDINGS OF TEXAS, L.P.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on the following counsel of record in accordance with the Texas Rules of Civil Procedure on this _13_ day of August, 2002:

| | |
|---|---|
| Ricardo M. Adobbati, Esq.<br>Attorney & Counselor At Law<br>134 E. Price Road<br>Brownsville, Texas 78521 | **CERTIFIED MAIL NO. 7106 4575 1292 3574 4882**<br>**RETURN RECEIPT REQUESTED** |
| Thomas Sullivan, Esq.<br>Brin & Brin, P.C.<br>1325 Palm Boulevard, Suite A<br>Brownsville, Texas 78520 | **CERTIFIED MAIL NO. 7106 4575 1292 3574 4905**<br>**RETURN RECEIPT REQUESTED** |
| A. Erin Dwyer<br>Figari, Davenport & Graves<br>901 Main Street, Suite 3400<br>Dallas, Texas 75202 | **CERTIFIED MAIL NO. 7106 4575 1292 3574 4875**<br>**RETURN RECEIPT REQUESTED** |

_____

Michael L. Hood

**NOTICE OF REMOVAL TO FEDERAL COURT**
D-1047404.1

**PAGE 2**