5

United States District Court
Southern District of Texas
FILED

SEP 1 1 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

02-157

| | | |
|---|---|---|
| J. RAUL RODRIGUEZ and JUAN I. RODRIGUEZ, M.D. | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 1: ~~02-057~~ |
| MEDICAL OFFICE BUILDINGS OF TEXAS, L.P. LINCOLN HARRIS, L.L.C. and COLUMBIA VALLEY REGIONAL MEDICAL CENTER | § § § § § | |
| Defendants | § | |

**PLAINTIFFS' MOTION FOR REMAND AND ATTORNEY'S FEES and MOTION FOR LEAVE TO ADD ADDITONAL PARTIES**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, J. RAUL RODRIGUEZ, M.D. and JUAN I. RODRIGUEZ, M.D. Plaintiffs and file this their MOTION FOR REMAND AND ATTORNEY'S FEES and MOTION FOR LEAVE TO ADD ADDITIONAL PARTIES and seeks that this action be remanded to the 357th District Court of Cameron County, Texas and would show unto the court the following:

**I.**

**FACTUAL ALLEGATIONS**

This lawsuit was filed on July 10, 2002 as a result of misrepresentations and inducement by defendants ultimately causing plaintiffs to sign a lease agreement with Columbia Valley Regional Medical Center for the rental of office space in Brownsville, Cameron County, Texas. The representations made at the time of signing were contrary to the terms of the agreement. Moreover, plaintiffs were told they were signing the agreement for the express purpose of allowing the medical center defendant to obtain the necessary financing for the building. After

obtaining said financing, the medical center would then provide a written agreement reflecting the oral representations made - properly reflecting the agreement between the parties.

Contrary to defendant's allegations, the claims are not limited to the written contract, but rather all actions taken by the Defendant Columbia Valley Regional Medical Center prior to the signing of the agreement as well as subsequent actions by all defendants in failing to honor the terms of the original agreement as well as the terms of the written agreement. Plaintiffs did not fraudulently join the medical center to simply defeat diversity. Plaintiffs found it necessary to file suit in order to effectuate the original agreement as well as to recuperate those damages sustained as a result of the misrepresentations. Plaintiffs will further show the written contract should be considered null and void based on the actions of the Defendants.

**II.**
**REMOVAL PURSUANT TO 28 U.S.C. §1332 AND**
**28 U.S.C. §1441 and §1446**

**A. APPLICABLE LAW**

Plaintiffs do not dispute the applicable law providing the basis for removal in this case. More specifically, it is clear pursuant to 28 U.S.C. §1332, Defendants may seek removal as long as there is complete diversity of citizenship between the Plaintiffs and all properly joined defendants, and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.

It is important to note the courts construe the statutes in favor of remand and against removal. *Frank v. Bear Stearns and Co.,*128 F. 3d 919 (5th Cir 1997), *Diaz v. Sheppard* 85 F.3d 1502 (11th Cir. 1996). *See also*, 28 U.S.C. §1441. Any doubts as to whether diversity exists must be resolved in favor of Plaintiffs. *Rodriguez v. Sabatino,* 120 F.3d 589 (5th Cir. 1997), *cert. denied,* 118 S. Ct. 1511 (1997); *Green v. Amerada Hess Corp.,* 707 F.2d 201 (5th Cir. 1983).

Plaintiffs will show Defendants have failed to meet their burden pursuant to the above enumerated statutes as Defendant Columbia Valley Regional Medical Center is a proper defendant. Each matter will be discussed below:

**B. DEFENDANT COLUMBIA VALLEY REGIONAL MEDICAL CENTER HAS NOT BEEN FRAUDULENTLY JOINED AS PROPER CAUSES OF ACTION EXIST AGAINST DEFENDANT COLUMBIA VALLEY REGIONAL MEDICAL CENTER.**

The burden is on defendants to establish a party has been fraudulently joined. *Madison v. Vintage Petroleum Inc.* 114 F.3d 514 (5th Cir. 1997). A defendant seeking to show that a party has been fraudulently joined or qualifies as a sham party bears a "heavy burden" of making such a showing. *Id.*; *Pampillonia v. RJR Nabisco, Inc.* 138 F. 3d 459, 461 (2nd Cir. 1998). The burden can only be met by "clear and convincing evidence." *Id.*; *Rodriguez,* 120 F.3d at 589.

In order to prove fraudulent joinder, the Defendant must show:

(a) there is an outright fraud in plaintiff's recitation of the jurisdictional facts;

(b) there is no possibility of establishing a cause of action against the non-diverse defendant in state court;

(c) the diverse defendant is joined with a non-diverse defendant as to whom there is no joint or several liability for the matters asserted and the claims asserted against the non-diverse defendant has no connection to the claims asserted against the diverse defendants.

*Madison*, 114 F.3d at 516.

As will be shown below, none of the above factors have been satisfied by Defendants.

**C. PLAINTIFF'S CAN MAINTAIN A CAUSE OF ACTION AGAINST COLUMBIA VALLEY REGIONAL MEDICAL CENTER AS A MATTER OF LAW.**

Plaintiffs plead several causes of action against the Medical center. Defendants incorrectly assert the claims can all be characterized as claims arising out of the written contract. Defendants' claims are unfounded as will be shown below.

Simply stated, Defendants' liabilities are premised on two grounds:

1. The original misrepresentations and fraud committed by the Medical center with the intent to gain the signature of Plaintiffs for a lease that was not the correct agreement of the parties (at this juncture, it appears the Medical center is the only defendant related to these claims, although Plaintiffs reserve the right to amend as discovery progresses).

2. The breach by all defendants in failing to maintain the property in a habitable, functional, sanitary fashion throughout the lease term.

a. **DAMAGES WERE SUFFERED BEFORE THE ALLEGED TRANSFER OF PROPERTY.**

Firstly, Defendants claim the causes of action cannot be supported because the interest by said defendant in the building and leases was transferred to Medcap prior to the physical damages suffered by claimants as a result of water and sewer leakage. The damage to the property occurred prior to the date of transfer. Oral representations were made and the problems were not repaired. It was only until a later date that written notification was given. Defendants continue to conveniently misstate the facts. Nothing in the pleadings indicate the water leakage took place after July 2000 or after the alleged transfer. Attached as exhibit "C" is the affidavit of Raul Rodriguez clearly establishing the problems with the office building occurred prior to, and after, the alleged transfer of ownership. Attached as exhibits "A" and "B" is correspondence from Plaintiffs to Defendant Valley Regional Medical Center notifying them of the damage.

These letters are dated July 16th, 1999 and August 6, 1999, respectively, well before any transfer. There were also earlier oral notifications. See affidavit attached hereto.

In determining fraudulent joinder, the district court may use summary judgment procedure by using affidavits and other evidence outside the pleadings. *Burchett v. Cargill, Inc.* 48 F.3d 173 (5th Cir. 1995). As clearly demonstrated by the caselaw above, defendants have failed to substantiate and meet the heavy burden of convincing this court there exists no possibility that plaintiffs would be able to establish a cause of action against the defendants in state court. The affidavit attached hereto as Exhibit "C" clearly refutes their unfounded allegations and they will not be able to present evidence to refute said affidavit.

Although the damages claimed by plaintiffs are not limited to simply damages under the contract, assuming they were, Defendants claims still fail. Under traditional contract principles, tenants would have four years from the date of the loss to file suit alleging breach of contract. See Texas Civil Practice and Remedies Code §16.004. The lease was entered into on May 19th, 1997. Landlord failed to remedy the problems and tenants have been subject to a continuing breach as the problems with the property continued to occur. Taking the dates to the defendants' advantage, the earliest date to toll the statute of limitations would have been July 16th, 1999. This would allow Plaintiffs until July 16th, 2003 to file suit. Having filed suit on July 10, 2002, they fall well within the maximum four-year period and as such, they are entitled to assert a cause of action against the medical center. Moreover, the evidence clearly shows plaintiffs have been subject to a continuing breach and as such, plaintiffs preserve the ability to file suit well past the date of the original damage.

b. DAMAGES SOUGHT AGAINST THE MEDICAL CENTER ARE NOT LIMITED TO PROPERTY DAMAGES.

Secondly, even assuming *arguendo*, the damages occurred after the transfer, the claims by Plaintiffs are not limited to the physical damages of the office. They also include the additional rent and damages as allowed by Texas law as a result of the misrepresentations made by the medical center prior to, and at the time of, entering into a written agreement. Plaintiffs' petition clearly states the misrepresentations included the amount of rent to be paid during the period of the lease as well as how same would increment from year to year. Such fraudulent actions give rise to damages outside the contract and as such, Plaintiffs will be seeking such damages.

The damages outlined in Plaintiffs' Original Petition are simply the minimum damages they will seek. Plaintiffs are not required to plead the maximum amount of damages. They are simply required to plead whether or not the amounts are within the jurisdictional limits of the court. *Sears, Roebuck & Co. v. Big Bend Motor Inn, Inc.* 818 S.W. 2d 542 (Tex. App. – Fort Worth 1991, writ denied); TRCP 47. Only after special exception by defendants, will plaintiff be required to plead the maximum amount of damages claimed. TRCP 47(c); *Cruz v. Morris*, 877 S.W. 2d 45 (Tex. App. – Houston [14th Dist.] 1994, no writ).

Contrary to defendants' assertions, case law allows the use of parol evidence to substantiate these claims if such evidence is to be used to prove the existence of fraud or undue influence. *See U.S. v. Texarkana Trawlers*, 846 F.2d 297 (5th Cir. Tex. 1988).

Without delving into the specific facts of the case at bar, Plaintiffs will show misrepresentations were made by the Defendant medical center regarding the terms of the written agreement, its enforceability, as well as the reasons for the need to have the agreement signed although the terms were contrary to the oral representations. Such actions induced the Plaintiffs into signing said agreement. See affidavit attached hereto as exhibit "C". Based on the

above, plaintiffs can, and will be able to maintain a viable cause of action against the medical center based on fraud. As such, Defendants' claims as to fraudulent joinder must fail.

### c. THE ACTUAL AGREEMENT IS NOT THE ONLY MANNER PLAINTIFF'S MAY OBTAIN DAMAGES FROM DEFENDANT COLUMBIA VALLEY REGIONAL MEDICAL CENTER.

Defendants further argue in their Motion for Remand that the medical center is not responsible for the damages alleged based on the transfer of interest in the property to the remaining defendants. As stated earlier, the damages plead are for the minimum amount sought. The misconception by defendants as to the amount plead is misguiding. Some of the damages occurred prior to the transfer. Additionally, Plaintiffs will be seeking a return of all rent paid to the medical center (prior to the transfer) and the remaining defendants in excess of the original oral agreement.

Plaintiffs' claims are that the written lease agreement should be null and void due to the fraudulent actions of the medical center. Defendants assert the damages are limited to the written contract and as such, because of the transfer of interests, the medical center is not a necessary party. Defendants are incorrect. The medical center represents the main defendant in this matter. The crux of this suit are the misrepresentations made at the outset by the medical center inducing plaintiffs to sign an agreement they were told was to be a document for the medical center's benefit in obtaining a loan. They were told that upon signing, the medical center would be funded and they would then be provided a new agreement reflecting the true terms to be followed by both Landlord and Tenant. See affidavit attached hereto as exhibit "C". As such, the written agreement is not the determining factor as to what type or amount of damages are recoverable, and furthermore, against whom they are recoverable. The fraud constitutes the root of the dispute. To argue the medical center is a non-essential or fraudulent party is ludicrous.

**d. ADDITIONAL DISCOVERY NEEDS TO BE UNDERTAKEN TO DETERMINE THE EXTENT OF AN AGENCY RELATIONSHIP BETWEEN DEFENDANTS.**

Defendants further claim there is insufficient factual support to support that defendants acted in concert and as such the allegations of a relationship between the medical center and other defendants should be dismissed. Ironically, they fail to provide any evidence to support otherwise. No discovery has been conducted to date. The removal in this matter took place before any responses or depositions were provided to determine when the transfers of ownership were discussed, the reasons for the transfers, as well as what interests the parties may have in each of the entities made parties to this suit.

Case law clearly outlines the requirements for filing pleadings. Texas simply requires that the petition state enough facts to provide the defendant with information to know the nature of the claim. TRCP 45(b); *Roark v. Allen*, 633 S.W.2d 804 (Tex. 1982). It is not necessary for the petition to state the specific facts on which the plaintiff intends to rely. *Paramount Pipe and Supply Co. v. Muhr*, 749 S.W. 2d 491 (Tex. 1988). There is no requirement that Plaintiffs provide direct evidence at this time as to the existence of the agency relationship. Plaintiffs have substantial reason to believe the transfers were made with the intent to defraud Plaintiffs as well as other tenants. See Affidavit attached as exhibit "C". It is now necessary to conduct discovery to determine whether such beliefs can be substantiated through further evidence.

Clearly, the current state of the law as well as the factual evidence provided in this motion indicate several causes of action can be maintained against the medical center. The root of the entire dispute revolves around the misrepresentations made by the medical center prior to and during the initial meetings soliciting plaintiffs to lease the proposed medical office building. Based on those statements by the medical center, a lease was signed that did not reflect the agreement between the parties simply for the benefit of the medical center. The actions of the

medical center were made intentionally to induce the plaintiffs into an agreement that was to be amended or nullified to reflect the true agreement of the parties after funding was obtained. Defendants have failed to meet their burden in this matter.

## III.

## MOTION FOR LEAVE TO AMEND WITH ADDITIONAL PARTIES

Additional parties are to be added further defeating diversity jurisdiction.

Plaintiffs would further offer since the filing of the Original Petition, subsequent investigation has revealed the need to add additional parties as defendants in this matter. More specifically, at the time of Plaintiff's occupation of the leased premises Lorda Corp. had contracted with Columbia Valley Regional Medical Center for the maintenance and upkeep of the premises. Notice was provided to them for the repair of the leaks and sewage as well as the discrepancies in the lease agreement. They failed to remedy the problems. The involvement of Lorda Corp. may be essential in the determination of who had maintenance and control of the premises both before and after the alleged transfer of ownership. Investigation conducted with the Texas Secretary of State indicates Lorda is a Texas Corporation with principal offices at 1004 Padre Blvd., Suite Q4, South Padre Island, Texas 78597.

An additional party, Grubb and Ellis may further be made a party to this suit. Grubb and Ellis apparently replaced Lorda in its duties at some time during the lease term and prior to obtaining the services of Defendant Lincoln Harris. They were further made aware of the damages and concerns regarding the leased premise. It appears based on discussions with the Texas Secretary of State that Grubb and Ellis Company is a Delaware company with its principal place of business at 800 Brazos, Austin TX 78701.

The need for these additional parties became apparent after removal. Plaintiff's seek this motion for leave to amend not for purposes of defeating jurisdiction, but rather for justice to be served, as Plaintiff's may be prejudiced should these parties not be made parties to this suit.

Obviously once these parties have been added, diversity will have been defeated and defendant's reasons for removal, although incorrect as stated above, become moot.

## IV.

## ATTORNEY'S FEES

Pursuant to those facts and cases delineated above, plaintiffs hereby respectfully request attorney's fees pursuant to 28 U.S.C. §1447(c). Said section allows for the recovery of expenses, including attorney's fees incurred as a result of filing a motion for remand. In its discretion, the court may consider awarding such expenses in light of the reasons for the original removal and its impropriety. _Miranti v.Lee_, 3 F.3d 925 (5th Cir. 1993). Plaintiffs would offer a granting of attorney's fees in this matter is valid considering the actions of defendants in seeking removal without any attempts to gather the necessary evidence to meet the burden of such removal. Reasonable attorney's fees in this matter, considering the time and effort involved amounts to $2500.00.

## V.

## CONCLUSION

Clearly, defendants have failed to meet their burden in this matter. As stated above, case law indicates all doubts shall be resolved in favor of a remand. There is no question the nedical center is a necessary party to this matter and as such diversity jurisdiction does not exist in this matter. Plaintiffs have alleged and will show the medical center took intentional acts to induce plaintiffs into signing an agreement under the misrepresentations that the agreement would never

be enforced. Namely that it was simply created to obtain a loan after which a true agreement would be signed. In addition, Plaintiffs suffered actual damages as a result of the failure of all defendants to properly maintain the premises. The medical center is without question a necessary party to this suit and furthermore, the allegations of fraud and breach of the original agreement as well as the other causes of action asserted in the original petition provide viable causes of action. Defendants have failed to meet their burden of establishing fraudulent joinder, and as such, this matter should be remanded to the 357th District Court, Cameron County, Texas.

Further, should this honorable court grant leave to amend, the addition of Lorda Corp and Grubb and Ellis Co. defeat jurisdiction as they are businesses located in Texas and citizens of the State of Texas.

Respectfully Submitted,

_____

HON. RICARDO M. ADOBBATI
STATE BAR NO.: 00790208
COUNTY I.D. #11922
FED I.D. #18158

ATTORNEY FOR PLAINTIFFS

134 E. PRICE ROAD
BROWNSVILLE, TX 78521
(956) 544-6882
(956) 544-6883 - FAX

## CERTIFICATE OF SERVICE

I do certify that a true and correct copy of the above foregoing document has been forwarded via certified mail, return receipt requested, via facsimile, and/or hand delivered on this __10__ day of September, 2002, as follows:

Hon. Michael L. Hood
Haynes and Boone, LLP
901 Main Street
Suite 3100
Dallas, Texas 78202-3789

Hon. Thomas Sullivan
Brin & Brin, P.C.
1325 Palm Blvd. Suite A
Brownsville, Texas 78520

Hon. A. Erin Dwyer
Figari, Davenport & Graves
901 Main Street, Suite 3400
Dallas, Texas 75202

 

 

_____
HON. RICARDO M. ADOBBATI



July 16, 1999

Lorda Corp
David Suissa, CEO
410 Padre Blvd.
So. Padre Island, TX 78597

Dear Mr. Suissa,

The following incidents remain unresolved and I am therefore requesting that they be given your immediate attention.

Since early April the air conditioning system has not been functioning properly. We have made numerous telephone calls to Kenny Sewell's office. They have made multiple service calls. Coastal Engineering also made a service call and stated that everything was working properly. However, the air condition system still does not cool properly. The temperature in the exam rooms runs about 88 degrees, uncomfortably hot for ill patients.

On May 19, 1999, a sewer pipe began leaking on the second floor and flooded the office of Dr. Juan Rodriguez. The carpet was saturated as was a chair and the ceiling tile fell out. The carpet developed a foul odor in spite of being cleaned. On June 2, 1999, this happened again. The office and outer hallway have been cleaned, but continue to smell. The contaminated carpet must be removed and replaced.

These two problems must be corrected. I am requiring that you have both situations resolved to our satisfaction by August 1, 1999.

I shall be awaiting your call.

Sincerely,

J. Raul Rodriguez, M.D.
MD/pc

Exhibit "A"

## J. Raul Rodriguez, M.D.
## Juan F. Rodriguez, M.D.
### General & Peripheral Vascular Surgery
3 Ted Hunt Boulevard, Suite 1200
Brownsville, Texas 78521
Telephone (956) 350-2300 ✦ Fax (956) 350-2622

August 6, 1999

Charles Sexton
Chief Executive Officer
Valley Regional Medical Center
100-A E. Alton Gloor Blvd.
Brownsville, TX 78526

Dear Mr. Sexton:

During our conversation on Tuesday, August 3, 1999, I mentioned the flooding problems that have occurred in my private office. The following notes are to reinforce my concern.

When we moved into the Medical Plaza in November of 1998, we looked forward to a good working environment. Unfortunately, we have had continuous problems of which we have repeatedly complained. To date, the ceiling in my office has fallen in and the carpet has been flooded four times. In spite of several cleanings, the odor and stains remained. After nine months of promises, that carpet was finally replaced on July 30th.

I could not believe my eyes when I walked into my office on August 4th and once again stepped into a pool of dirty sewer water and fallen ceiling tile. Once again the cleaning crew had to shampoo and vacuum up this mess. And, again today, my ceiling is wet and needs replacing!

My first concern is naturally for the health of my patients and staff, but it is also a threat to me. The contamination by sewerage is a major problem that must be remedied immediately due to the possibility of hepatitis or other infectious diseases. I understand that this is not the only office to experience repeated flooding. How can I in good faith recommend other doctors to consider joining us at this location? Surely these problems are not good business practice.

Charles, I am requesting that the contaminated carpet be replaced again. I expect a written response from you and reassurance that the problem will be permanently solved, as I am beginning to feel that your corporation does not welcome our occupancy.

Sincerely,

Juan F. Rodriguez, M.D.
JFR/pc

CC: Lorda Corporation

## Exhibit "B"

## AFFIDAVIT

BEFORE ME, THE UNDERSIGNED AUTHORITY, PERSONALLY APPEARED, J. RAUL RODRIGUEZ, M.D. KNOWN TO ME TO BE THE PERSON WHOSE NAME IS SUBSCRIBED BELOW, AND UPON BEING DULY SWORN HE DEPOSED AND SAID:

"MY NAME IS J. RAUL RODRIGUEZ, I AM A PARTY IN THE ABOVE-ENTITLED AND NUMBERED CAUSE. I AM OVER THE AGE OF 18, OF SOUND MIND AND COMPETENT IN ALL RESPECTS TO MAKE THIS AFFIDAVIT. I HAVE PERSONAL KNOWLEDGE OF THE FACTS STATED HEREIN.

I SWEAR THAT THEY ARE TRUE."

TO THE HONORABLE JUDGE OF SAID COURT:

1. I was approached by Columbia Valley Regional Medical Center at the latter part of 1996 with regard to the possible leasing of Medical Office Building adjacent to the proposed location of the hospital.

2. I was informed by Columbia Valley Regional Medical Center they would not be able to construct such offices unless they obtained third party financing.

3. In order to obtain such financing, Columbia Valley Regional Medical Center informed me they needed to obtain commitments for rental of the building prior to its construction.

4. A certain percentage of office space required commitment before financing was provided by the lender.

5. Columbia Valley Regional Medical Center further indicated the lease required a long term commitment, rent at a specified rate, as well as an increase in rent on an annual basis.

6. We were provided with the agreement for our review.

7. Columbia Valley Regional Medical Center stated that we were not to worry about the length of the contract or the rent and rate increases as those terms were simply to be offered to the lender for loan approval.

8. Columbia Valley Regional Medical Center indicated the lease was not going to be enforced as the intent of the hospital was to provide a subsequent agreement after loan approval correctly reflecting the terms of the agreement for lease.

9. Columbia Valley Regional Medical Center indicated the true amount of rent to be provided was to be a fixed rate of $1.25 per square foot for a period of 5 years.

10. We signed the provided lease only after being assured by Columbia Valley Regional Medical Center that the terms would be amended after funding.

11. After the lease was signed, we were advised the loan was approved. Columbia Valley Regional Medical Center failed to respond to our requests that the lease be amended to reflect the true terms of our agreement.

12. Subsequently, without any prior notice, we received correspondence from Columbia Valley Regional Medical Center indicating the property was now managed by Grubb and Ellis. No representations were made that ownership was transferred.

13. We contacted the hospital regarding the transfer and how this would affect the true agreement regarding the rental space. All requests for inquiry were ignored.

14. We have had problems with the rented space from the outset. More specifically, we have had windows that consistently leak into the areas as well as problems with sewage entering the leased area.

15. Columbia Valley Regional Medical Center was notified orally and through written correspondence. The notifications were given prior to any transfers of ownership by the hospital.

16. Columbia Valley Regional Medical Center has failed to remedy the problems from the outset. The sewage penetration, flooding and leaking have continued through the lease term. In addition, limited steps have been taken to assure the area were sanitized and safe for use as a medical office.

J. RAUL RODRIGUEZ, M.D.

**SUBSCRIBED AND SWORN** before me on this the _____ 6 _____ day of September, 2002 to certify which witness my hand and seal.

Olga Lydia Glasgow
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 6-17-2006

NOTARY PUBLIC in and for
THE STATE OF TEXAS

EXHIBIT "C"                                                                 2